Roy BROWN, Melvin L. McClure, Royce W. Brown, Donald R. Brown, Harry Macrory, Trustee for Jean C. McClure, and Harry Macrory, Trustee for Jan F. McClure, co-partners, d/b/a Brown-McClure Lumber Company, Plaintiffs in Error,

v.

W. D. MAGERS, Defendant in Error.

No. 38782.

Supreme Court of Oklahoma.

Jan. 31, 1961.

Lytle, Johnston & Soule, by David C. Johnston, Oklahoma City, for plaintiffs in error.

H. A. Leatherman, and Gerald S. Tebbe, Oklahoma City, for defendant in error.

BLACKBIRD, Vice Chief Justice.

By filing, on February 19, 1957, a petition in intervention in this materialman's lien foreclosure, instituted the previous month by A. E. Nott Electric Company, as plaintiff, against W. D. and Jo Ann Magers,

husband and wife, as defendants, plaintiffs in error sought to foreclose a materialman's lien for lumber and building materials furnished for the construction of a new residence at 2725 Lakeside Street, in an addition to the "Village" (a relatively small incorporated area surrounded by Oklahoma City). Plaintiffs in error will hereinafter usually be referred to merely as the "Lumber Company."

The "Statement of Materialman's Lien", said Lumber Company had previously, on September 28, 1956, filed in the office of the Court Clerk represented that there was due it a total of $5,419.41 for such materials, but in paragraph 3 of its petition of intervention in this action, it alleged that said statement had erroneously included two rolls of nylon cord of the value of $9.89; and it was asserted that said "lien statement is hereby amended" by deducting that amount, to leave "the total due * * * for which a lien is claimed" of only $5,409.-52. The prayer of said petition sought judgment against the Magers for the original amount of $5,419.41, but the only pleaded request for foreclosure of the lien was contained in the same sentence as follows:

"* * * that said judgment *to the extent* of Five Thousand Four Hundred Nine and 52/100 Dollars ($5409.-52), together with interest at the rate of six percent (6%) per annum from June 2, 1956, until paid, and together with an attorney's fee of One Thousand Dollars ($1,000.00), be decreed a good and valid materialman's lien against the real property and improvements thereon hereinbefore described. * * *" (Emphasis ours).

Long before trial of the issues between the Lumber Company and the Magers, an attempt was made to follow the procedure prescribed by Tit. 42 O.S.1951 § 147, which reads in part as follows:

"Any person against whom a claim is filed under the provisions of the law relating to mechanics' and materialmen's liens may at any time upon three (3) days notice in writing to the claim-ant discharge such lien by depositing with the Court Clerk in whose office such lien claim has been filed *the amount of such claim* in cash and executing and filing with such Court Clerk a good and sufficient bond to the claim and with adequate solvent sureties conditioned that such person will pay any reasonable attorney's fee and all court costs, and interest, that may be adjudged against him finally by any Court of competent jurisdiction in the event such claimant recovers judgment on such claim in the amount for which such claim is filed;

\* \* \* \* \* \*

"* * * in the event the lien claimant does not recover judgment finally for the full amount of the cash deposited no liability shall exist upon said bond and no judgment shall be rendered thereon for any amount, and the balance of such cash deposit over and above the amount of the claim filed shall be returned * * *." (Emphasis ours).

For such procedure, the trial court entered an apparently agreed order by journal entry "O. K'd" by the Magers' attorneys, Tebbe and Leatherman, filed February 25, 1957, containing a waiver of notice (which apparently had reference to the 3-day notice required by the above quoted statute) and requiring the Magers to "pay into court *the amount of the claimed liens of*" Nott and the Lumber Company, and to file bonds for "Attorney's fees and expenses * * *". By way of complying with said order, the Magers filed, as of the same date, a surety bond in the amount of $1,500 obligating them jointly and severally to pay "any reasonable attorney's fees * * *, court costs and interest that may be adjudged against them * * *", but the bond was specifically conditioned upon the Lumber Company's recovery—not of $5,-409.52 (for which said company prayed lien foreclosure, as aforesaid), but of the larger sum of $5,419.41, which had been claimed as aforesaid, by its lien statement filed previous to commencement of the litigation.

When the Magers, under the above statutory procedure, and court order, for discharging Nott's and the Lumber Company's liens against the involved real estate, deposited sums of cash with the court clerk, the sum for discharge of the latter lien was likewise $5419.41, rather than the lesser sum of $5,409.52.

In March, 1957, Nott Electric Company's claimed lien was discharged by payment to it of the sum deposited with the court clerk for that purpose; and same was dismissed from the action with prejudice.

In March, 1958, the Magers filed an answer and other pleadings, in which, among other things, they denied, and demanded strict proof of, all items of materials the Lumber Company's petition alleged it had furnished; prayed that said Company be denied any recovery thereon; demanded a jury trial; alleged that, by reason of the Lumber Company's hereinbefore described admission of error in its lien statement, it could not recover the full amount of the Magers' hereinbefore mentioned cash deposit, and therefore could not obtain judgment for any attorney's fee and interest.

When the cause came on for trial, and immediately after the Lumber Company's first witness had taken the stand, the Magers' attorney, Tebbe, objected to the introduction of any evidence on "all of the grounds * * * raised * * *" in their pleadings, and "* * * on the specific ground that there is a variance between the lien claimed * *. *" in the original lien statement and the one attached to the Lumber Company's petition in intervention. Thereupon, the following colloquy occurred between the trial judge, Mr. Johnston, the Lumber Company's attorney, and Mr. Tebbe:

"* * * The Court: He (Mr. Johnston) is now asking for leave to amend, as I understand it.

"Mr. Johnston: I think we can save a lot of time if the Court will permit me to state the amendment I wish to make, because I am going to answer a lot of their questions. *I am not going to amend the lien statement at all. I am just asking leave to amend the petition in intervention.*

"The Court: To conform to the lien statement on file?

"Mr. Johnston: *I am going to go right back to the lien statement one hundred percent.*

"I want to amend by delineating one phrase from the petition in intervention.

\*　　\*　　\*　　\*　　\*　　\*

"The Court: You are *going right back* to what they are trying to hold you to, the lien statement on file?

"Mr. Johnston: That's right; *the lien statement as filed.* That is what I am going to go on.

"The Court: Well, *leave will be given so to do.* Exceptions will be allowed to the defendants.

"Mr. Tebbe: Then, you overruled the objection?

"The Court: Well, it had that effect.

\*　　\*　　\*　　\*　　\*　　\*

"Mr. Johnston: The plaintiff now desires to amend its petition in intervention by delineating that part of paragraph 3 on page 2, commencing with the words 'That an error occurred', and ending with the words—I mean with the figures '$5,409.32,' so that *the petition in intervention now will allege a lien, as filed in the District Court Clerk's office, in the amount of $5,-418.41.*

"The Court: That is all you are seeking judgment for?

"Mr. Johnston: Yes, *we are seeking judgment for that amount.*

"The Court: The amount the lien statement shows?

"Mr. Johnston: *The amount the lien statement shows.*

"The Court: All right.

"Mr. Tebbe: If Your Honor please, I further object to that amendment as he has stated it, in that he has admitted

in the original petition that there is nine dollars and some cents of non-lien items.

"Mr. Johnston: I am striking that part out.

\* \* \* \* \* \*

"Mr. Tebbe: Well, we ask for a continuance at this point.

\* \* \* \* \* \*

"The Court: \* \* \* That will be overruled and exception allowed likewise.

\* \* \* \* \* \*

"Mr. Johnston: I might call the Court's attention to the fact that the confusion is that in another case we had a non-*waiv*able item. I merely said that an error occurred in including that. \* \* \* We have obtained evidence that *this was actually consumed in the job*." (Emphasis ours).

At the close of the trial, after the court sustained Jo Ann Magers' demurrer to the evidence, because of the absence of evidence that any of the material had been furnished her, and after unsuccessful attempts by the Lumber Company to prove that the above-mentioned nylon cord was purchased for, or used in, the involved construction, its attorney confessed his error in previously requesting leave, at the beginning of the trial, to amend the Lumber Company's petition, as above shown (by deleting that part which purported to reduce its claim by said cord's value of $9.-89). Thereupon, defendants orally moved that the Lumber Company, be denied recovery of any interest, court costs or attorney's fees, and any judgment therefor against the bond they had filed for the payment of such items, as aforesaid.

By the "judgment in rem" the trial court thereafter rendered for the Lumber Company in the total amount of $5,409.52, he sustained the last mentioned motion, ordering only the adjudged sum to be paid from the Magers' hereinbefore mentioned cash deposit, with the remainder of said deposit in the amount of $9.89 to be refunded to them; and denied the Lumber Company any attorney's fee, interest, or court costs, all in accord with the following findings:

"1. That Lumber Company has sustained all of the material allegations in its petition in intervention as to the building materials sold and delivered to defendant, W. D. Magers, and used in construction of improvements on the real property involved herein; that Lumber Company having waived a personal judgment against defendant, W. D. Magers, is entitled to a judgment in rem in the sum of Five Thousand Four Hundred Nine and 52/100 Dollars ($5,409.52), as prayed for in the petition in intervention and that said judgment shall be paid from the funds deposited by defendant, W. D. Magers, with the Clerk of this Court.

"2. That Lumber Company in its petition in intervention having amended its claim against defendant, W. D. Magers, by striking from the lien statement the item of January 30, 1956 invoice No. 5272 for two rolls of nylon cord in the amount of Nine and 89/100 ($9.89), and seeking and recovering a judgment only for the amount claimed in the lien statement as amended, has not recovered a judgment in the amount for which the claim was filed and by virtue of the provisions of Title 42 O.S.1951, Section 147, is not entitled to recover judgment for interest, attorney's fees and court costs."

In urging reversal of that part of the judgment denying it attorney's fees, court costs and interest, the Lumber Company's argument proceeds from the premise that its judgment as to the $5,409.52 was "for the full amount claimed and sued for \* \* \*". Its counsel says that when, on February 21, 1957, the court ordered the Magers to "pay into court the amount of the claimed liens \* \* \*", as aforesaid, the Lumber Company's previously filed lien statement showing $5,419.-41 due it had been amended and reduced

to $5,409.52 by the petition in intervention it filed herein, as aforesaid. They further say that the Magers' making of the cash deposit of $5,419.41—instead of only $5,-409.52—was purely a voluntary act going beyond the requirements of the court's order and Section 147, supra; and that the court's judgment should not have allowed them, by so doing, to preclude recovery by the Lumber Company of its attorney's fees, interest and court costs. They say that if Section 147, supra, is construed to allow this " * * *, we would have an absurd situation where the property owner could defeat each lien claim by merely depositing with the court clerk a sum of money in excess of the amount claimed as a lien against the property."

Without regard to whether, within the contemplation of Section 147, supra, a lien statement (previously filed in the office of the court clerk, referred to in said section, as being done "under the provisions of the law relating to mechanics' and materialmen's liens") may be considered, (for the purpose of applying said section) as capable of being amended by a petition seeking foreclosure of the lien so as to effectively change and reduce the total shown on said statement, we are convinced that, under the plain wording of the statute, and the construction given it in Consolidated Cut Stone Co. v. Seidenbach, 181 Okl. 578, 75 P.2d 442, a lien claimant cannot recover on the bond specified therein for attorney's fees, court costs, and interest, unless it is "entirely successful", and has established the full amount of its claim. The case of Smith v. Findley, Okl., 298 P.2d 440, cited by the Lumber Company, was not an action to recover on such a bond, and its decision concerning amendment of a lien statement is not controlling here. The Company's counsel seeks to distinguish the Seidenbach case, supra, on the ground that, in that case, nothing was done by way of amending the lien statement before trial, but we consider this factual difference insignificant under the circumstances here. More significant is the fact that when this case came to trial, the Lumber Company, by an oral and second amendment, obliterated its petition's purported first amendment of its lien statement, and was again claiming the entire $5,419.41, shown to be due in said lien statement. The language the Lumber Company's attorney used in obtaining the trial judge's permission, at the close of the trial, to amend its petition to conform to the proof (that the nylon cord had not been purchased for, or used in, the involved construction) may have mislead said judge into temporarily forgetting that, at the beginning of the trial on a previous day, said attorney had not just requested permission to, *but had actually orally amended said petition* to include the value of the nylon cord. Be that as it may, however, and regardless of the trial court's power to allow such a second amendment at that stage of the trial, the fact remains that, by going to trial seeking judgment for the larger amount of $5,419.41, which included the value of said cord, the Lumber Company put the Magers to the trouble and expense of defending a claim thereafter proved to be excessive and partially incorrect. Under the circumstances shown in this trial record, it is not only plain that the Magers' cash deposit was not in excess of that claim, but that (according to the plain wording of Section 147, supra) said lien claimant did "not recover judgment finally for the full amount" of said cash deposit. This situation obviously invoked the further provision of Section 147, supra, that "no liability" should exist on the (Magers') bond "for a reasonable attorney's fee, costs of suit and interest", and "no judgment shall be rendered thereon for any amount, * * *." We therefore find no error in the trial court's refusal to include such recovery in his judgment. The Lumber Company's appeal on that ground is therefore without merit, and that part of the judgment is hereby affirmed, unless we hereinafter determine, on the basis of the assignments of error in Mr. Magers' cross appeal, that, for jurisdictional reasons, any

decision on the merits of the case is unauthorized and inappropriate.

■ Under his "Proposition of Law No. 5" in support of his cross-appeal, Mrs. Magers argues, in substance, that, in this case, the trial court purported to try a cause of action over which it had no jurisdiction. He refers to the hereinbefore mentioned fact that the summons issued upon the Lumber Company's petition in intervention, and served upon him February 21, 1957, purported to give him until March 21st, 1957, to answer " * * * the petition of the plaintiff." He points out that, before the latter date arrived, the so-called "plaintiff" in the case, A. E. Nott Electric Company, had been dismissed from it. He argues that (upon the basis of the quoted language in the summons) there was then nothing for him to answer. He also. says at one point in his argument that after the cash deposits had been placed with the court clerk, the Lumber Company was not entitled to intervene. At another place in his brief, however, he concedes that, after these deposits were made, both Nott Electric Company and the Lumber Company had "separate" but "independent" actions against him. While it is logical, as Magers argues, that after a suit has been dismissed, there is no controversy before the court in which to intervene, here, the action had not been dismissed when the Lumber Company intervened; and we do not think the fact that when Nott Electric Company thereafter dismissed the action (solely as to its controversy with the Magers) Mr. Magers' answer (under the summons the Lumber Company had caused to be issued for him) was not yet due—nor the fact that said summons (by inadvertence or otherwise) referred to the petition of intervention as "the petition of plaintiff"—constituted deterrents to the court's jurisdiction. When Nott Electric Company's claim was taken out of the case by discharge and dismissal, the action was still pending as between the Lumber Company and the Magers, and the relationship of these opponents to each other, was, for all practical purposes, that of a "plaintiff" and "defendants"; and the action then stood, in relation to the questions Mr. Magers' argument now raises, as if those three had originally been the only parties to the action.

■ In Magers' "Proposition of Law No. 6", he contends that the trial court erred in denying his demand for a jury trial. He says that prior to the Lumber Company's waiver (just before the close of the trial) of a personal judgment, either party was entitled to a jury trial as a matter of right; and that, with the filing of the hereinbefore mentioned statutory bond and making of the cash deposit, the case "was transformed" into an action for recovery of a judgment "in personam" on the bond, and out of the deposit. Assuming, without deciding, that the trial judge's refusal to grant defendants' request for a jury trial was error *at the time of such refusal,* such error (if any) was cured and rendered harmless and insufficient as ground for reversal when the Lumber Company waived personal judgment and defendants failed to refute (as herein indicated) its evidence on any issue of fact involved in this appeal. In this connection, notice Oxley v. Southland Life Ins. Co., 159 Okl. 287, 15 P.2d 43, and other cases cited in 2A Okl.Dig., under Appeal and Error, ■ and 5A C.J.S. Appeal and Error § 1709, p. 835, note 71.

■ In his "Proposition of Law No. 1" Mr. Magers contends, in substance and effect, that the trial court erred in rendering judgment for the Lumber Company in any amount because "the proof of the last item which was the only one within the lienable time was not sufficient." The "last item" refers to materials for which the Lumber Company charged the Magers the sum of $8.81 under its invoice No. 16818, dated "6/2/56". (The last previous invoice listed on the Lumber Company's lien statement was its invoice No. 15590, dated "5/22/56".) It is Mr. Magers' position that the Lumber Company's proof was not sufficient to establish that it furnished the

materials listed on invoice No. 16818, as against the verified denial contained in his answer; and that therefore, since these were the only materials, represented in the Lumber Company's lien statement, as having been furnished within four months of the date said statement was filed in the court clerk's office, the foreclosure of the Lumber Company's lien was barred.

We do not think the evidence as to the Lumber Company's furnishing of the items listed on invoice No. 16818, was insufficient. These items consisted of: 2 screen door grills, one 10–11 Yale latch, 8–¼x3 log bolts, and 8 "¼" expansion shields. In their brief, Magers' counsel quote and refer to portions of the testimony of the Lumber Company's witnesses, Melvin McClure and Brodie Morris, and W. D. Magers himself, which would seem to leave doubt as to whether some of these items— particularly the two screen door grills and the Yale latch—were furnished for use in the construction of the house involved. In referring only to parts of the witness Brodie Morris' testimony, they ignore that which best supports the Lumber Company's theory that these articles were ordered by, and delivered to, Mr. Magers' father, as his agent, for use in the construction. The undisputed evidence was that at, or about, the same time Magers was constructing this house at 2725 Lakeside, he was also building another at 2729 Lakeside. As to the materials, equipment, or hardware in question, Magers elicited testimony from Wm. R. ("Bill") Wilson, his sub-contractor for the "finish work" on both houses, that he procured the hardware for them. By an oral statement he made to the trial judge, one of Magers' attorneys represented that further testimony from Wilson would show that the Yale latch in question was purchased, and delivered, to be used in the house at 2729, but was later carried over to, and used, in the one here involved at 2725. Examination of the record reveals, however, that this witness told the court,

while on the stand, that he could not "honestly remember moving" such a "screen latch set" from one of said houses to the other, despite the representation in Magers' brief to the contrary. Although Mr. Magers himself had testified that "none of this stuff" (listed in invoice No. 16818) went into the house involved here, Wilson testified he remembered "getting two or three locks at a time * * *". The Lumber Company showed, without direct contradiction, that Magers' father helped him supervise construction of these two houses; that on several occasions he ordered some of the materials used therein, and evidenced their delivery to him by signing the initials "WDM" on their invoices. The Company's employee, Brodie Morris, testified that this is what was done when he waited on the Father at the Company's office on the occasion of his ordering, and accepting delivery of, the items listed on invoice No. 16818. Morris also testified specifically that these items were ordered and delivered for use in the particular house involved here. Later, Morris testified that, during the trial, he examined this house and found installed therein a Yale latch set exactly like the one described on the invoice in question, though he admitted on cross examination, that such sets could be purchased at other places than his Company's establishment. Magers in testifying for himself, first maintained that he never "gave anybody any authorization personally" to sign invoices for materials to go into the construction. After being questioned by the trial judge however, he finally admitted that, if his father did this, it was "all right." Counsel for the Lumber Company says it discharged its burden of proof; that for such purpose it is only necessary to show that the material was sold to be used in the construction; and that, for the foreclosure of its lien, a lien claimant is not required to prove that every item of material ordered and delivered for certain construction is actually used therein, citing Anderson v. W. L. Oakes Mfg. Co., 10

Cir., 197 F.2d 725, 726. We agree with the court's statement in that case that " * * * it is not required that one claiming a lien maintain a checker on the premises to see that every piece of material furnished for the job actually goes into the improvement." Such would be placing too great a burden on such a claimant. The present case, like the cited one, is distinguishable from De Bolt v. Farmers' Exchange Bank, 51 Okl. 12, 151 P. 686, in that here there was no proof that any of the items listed on invoice No. 16818 were used in any construction other than the residence here involved. Nor does Magers' counsel cite any other case demonstrating that evidence such as was here adduced is insufficient to warrant lien foreclosure. After carefully examining all of the evidence pertinent to these items, we think it made out a prima facie case for the proposition that the Lumber Company did furnish invoiced materials to Magers on June 2, 1956, and that the trial court's judgment, in accord with such conclusion, cannot be said to be clearly against the weight of the evidence. It therefore follows that the trial court committed no error in overruling Magers' challenges to its jurisdiction on that ground.

■ In his "Proposition of Law No. 2", Magers contends that, in the procedure prescribed in Section 147, supra, "a personal judgment is an essential and indispensable element", and that, by its waiver of such a judgment, the Lumber Company precluded itself from recovering judgment in rem for any part of its claimed lien. The argument under this proposition is without merit, and unaccompanied by citation of Oklahoma decisions to support it. Nor do any of the authorities he cites from other jurisdictions deal with cases involving a statutory procedure like the present one, in which the lien is satisfied from cash deposited with the court clerk. This case is readily distinguishable from the various kinds of actions on bonds, and other undertakings, dealt with in those citations.

■ Magers' "Proposition of Law No. 3" is as follows:

"That the Court Committed Error in Rendering Decision and Judgment against This Defendant in Error, Separately, after His Co-Defendant, Joann Irene Magers, Was Dismissed from the Case; The Prayer of the Petition of the Plaintiff in Error Being for a Joint Judgment; and for That Reason the Lien Claimed was for a Joint Debt and the Bond for Discharging Said Debt Was a Joint Bond."

In answer to this proposition, counsel for the Lumber Company say that the latter part of it does not apply to the bond involved here, in that, by the bond's specific wording, the obligation therein undertaken was several, as well as joint. They further say that under the terms of Tit. 42 O.S.1951, § 141, the Company's lien originally attached to the real estate involved, whether it was owned by both Magers and his wife, or only by Magers. They further say that when, upon the making of the cash deposit, said lien was freed from the realty and attached, instead, to the money, it was likewise no deterrent to the lien's enforcement against, and satisfaction out of, said fund, that the fund may have been derived from money belonging only to Mrs. Jo Ann Magers or to Mr. Magers, or to both of them, jointly. They further say that this deposit was derived from the proceeds of the sale of the residence involved, though the record fails to establish this, just as it fails to show the ownership of the money from which the deposit was derived. We agree with the Lumber Company's counsel that once the deposit is made under order of the court, and in accord with Section 147, supra, and the Lien is established against it, as contemplated by said statute, judgment for the lien's satisfaction out of said deposit cannot be forestalled, or defeated, by the fact that all, or a part of said money, belonged to only one of the parties, prior to its deposit with the court clerk. The authorities cited in

**330**

Magers' argument do not deal with a situation like the one here, and are not in point.

■ Magers' "Proposition of Law No. 4" apparently is directed to an asserted incapacity on the part of one of the interveners and plaintiffs in error, Harry Macrory, Trustee for Jean C. McClure and Jan F. McClure, to sue as a co-partner in Brown-McClure Lumber Company. He contends that such a trustee cannot legally be such a co-partner, because his obligation "as to trust property is incompatible with the general delegation of trust power to each of his co-partners". We do not think Magers is in a position to raise such a question. He purchased the materials from Brown-McClure Lumber Company on invoices bearing both its name and the names of Roy Brown and Melvin McClure. He does not deny that these individuals are lawful members of the partnership, and, at the trial, finally abandoned his denial of, and defense against, all of said Company's claim except the $8.81 shown on invoice No. 16818, supra, and the $9.89 shown on invoice No. 5272, supra. Since intervenors maintained this action as individuals doing business in the name of Magers' creditor company, even if Macrory could not legally, by reason of his trusteeship, be a partner in said Company, this could have been "no consolation" to Magers, and could have availed him "in no way as a defense *· * *." Moore v. Leigh-Head & Co., 48 Okl. 228, 149 P. 1129, 1130.

As we have found no ground for reversal in the arguments presented in support of either the appeal, or the cross appeal, in this case, the judgment of the trial court is hereby affirmed.

WILLIAMS, C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

HALLEY, J., dissents.