## DE BOLT v. FARMERS' EXCHANGE BANK *et al.*

No. 4260.    Opinion Filed September 7, 1915.

(151 Pac. 686.)

1. **MECHANICS' LIENS—Foreclosure—Use of Material—Burden of Proof.** In order to foreclose a materialman's lien, it is incumbent upon the claimant to show that the material furnished was actually used in the building upon which the lien is claimed.

2. **SAME—Sufficiency of Evidence.** When it is shown that the material was sold to be used in the building, that it was delivered to the builder upon the premises, that the building was erected, and there is some testimony that some of the material was used therein, then a **prima facie** case is made out.

3. **SAME.** When such a showing is made on the part of the claimant, but is met by a showing from the contestants that much of the material furnished was diverted elsewhere and not incorporated in the building, unless the evidence discloses what

amount went into the building with sufficient definiteness, so as to enable the court or jury to arrive with some degree of certainty as to what sum is due for the material used in the building, the lien will be denied.

4.  **SAME.** Evidence examined, and **held** not to sustain a claim for a lien.

(Syllabus by Mathews, C.)

*Error from District Court, Noble County;*
*W. M. Bowles, Judge.*

Action by A. M. De Bolt against the Farmers' Exchange Bank and others. Judgment for defendants, and plaintiff brings error. Affirmed.

See, also, 46 Okla. 258, 148 Pac. 830.

*L. L. Cowley* and *Wright & Blinn,* for plaintiff in error.

*H. A. Johnson,* for defendants in error.

Opinion by MATHEWS, C. This is an action brought by plaintiff in error, who will be hereinafter styled plaintiff, under the materialman's lien law, against the Pioneer Construction Company, as contractor, and the Farmers' Exchange Bank, as owner of the premises sought to be charged with the lien, and others as interested parties, to recover the sum of $227.98 for materials furnished by plaintiff to said construction company for the erection of a certain two-story building on the premises in question under contract with the said bank, and to foreclose a lien thereon; the petition containing all the necessary averments. The Farmers' Exchange Bank, the Masonic Lodge, and the Odd Fellows' Lodge answered by a joint general denial, and as far as this decision is concerned the other parties hereto, with the exception of the construction company, who defaulted, pass out of the case without further notice. The case was tried to the court, who found for the

defendants, except that judgment was given against the Pioneer Construction Company, and the plaintiff has appealed.

It developed at the trial that the plaintiff was a lumber dealer, with offices located at Oklahoma City, and that the Pioneer Construction Company was a corporation, also located at Oklahoma City, and engaged in building contracting. On the 5th day of March, 1909, said construction company entered into a writen contract with defendant Farmers' Exchange Bank, at Red Rock, Okla., for the erection of a one-story brick bank building at Red Rock, in which contract the said construction company agreed to furnish all of the material and complete said building for the sum of $3,000. It seems that, after the work on the building had commenced, it was agreed that the Masonic and Odd Fellows' lodges could build a lodge room over the bank; that is, the bank gave permission to the two lodges to put a second story on the building then in course of erection, and on the 24th day of May, 1909, these two lodges entered into a written contract with the said Pioneer Construction Company, wherein, for a consideration of $1,100, to be paid by said two lodges, the said company agreed to construct a second story over the said one-story bank building then being erected. The said Pioneer Construction Company having failed to pay the plaintiff for the material purchased for the erection of the building, on the 18th day of September, 1909, the plaintiff filed a materialman's lien for the sum of $227.98 on the lot upon which the building in controversy was erected.

The plaintiff has presented several assignments of error; but, as we view the case, it will be necessary to pass upon but one question. In order for the plaintiff to foreclose a materialman's lien, it is incumbent upon him to

show that the material furnished went into the building. Rockel on Mechanics' Liens, sec. 22. Yet, when it is shown that the material was sold to be used in the building, that it was delivered to the builder upon the premises where the building is to be erected, and that the building was actually erected, and where there is some testimony showing that some of the material was used in the building, then a *prima facie* case is made out.

Plaintiff has made such a showing in the case, but is met by uncontradicted evidence upon the part of the defendants that much of the material furnished by plaintiff was by the said construction company diverted elsewhere, and was not used in the building in controversy; and the evidence does not disclose what amount went into the building, and what amount was diverted elsewhere, with sufficient definiteness to enable the court to determine with any degree of certainty what sum is owed by the defendants for the material actually used in the building.

In many states a materialman is entitled to a lien for the material furnished, whether it actually goes into the building or not; but in this state no lien can be claimed unless the materials are actually used or incorporated in the building. *Blanshard v. Schwartz*, 7 Okla. 23, 54 Pac. 303. And where the evidence shows that some of the material furnished for the erection of a building upon certain premises has been diverted elsewhere, then, before the materialman can recover for the material that actually went into the building, there must be such evidence presented on that point as to enable the court or jury to find therefrom with reasonable definiteness the part that went into the building, and if it is shown what part went into the building, and its reasonable value, then the materialman will be entitled to a lien for that sum, notwithstanding a part of the

material furnished has been diverted; but, on the other hand, if the evidence on that point is so vague and indefinite that the court or jury cannot with reasonable definiteness determine the part thereof that went into the building, then the materialman will be denied a lien for the lack of proof on that point.

A review of the evidence discloses that the plaintiff in this case must fail for the lack of such evidence as is required by the above rule. The only witness presented by the plaintiff who had any personal knowledge that any part of the material furnished actually was incorporated in the building was the manager of the said Pioneer Construction Company, and he testified that the material furnished was used in the building; but he was not constantly at the building during its erection, but, in his own language, he was there "from time to time, possibly every week." Neither the foreman of the building, nor any one who worked on the building, was a witness for plaintiff at the trial.

In rebuttal of the testimony of plaintiff on this point, the defendants presented several witnesses, who testified that much of the material furnished was carried away from the building by various parties. It was shown that, at the time the building was being erected, the said Pioneer Construction Company was also constructing an addition, 20 feet by 20 feet, to another building in Red Rock, and that the material therefor was procured from that furnished by various parties, including this plaintiff, for the erection of the bank building in controversy. Witness Coleman, for the defendant, testified in part as follows:

"Q. Do you know what became—or whether there was any of the material that was shipped there to the Pioneer Construction Company that was used in any other build-

ing or not, besides the building in question? A. Yes, sir; the Pioneer Construction Company built an addition on a store building, a 20-foot addition, and the material was wheeled and hauled across the street to that building. Q. From where it had been unloaded next to the bank building in question? A. Yes, sir; on the street in front of the bank building. Q. How large a building is that? A. The addition is 20 by 25. Q. State what kind the material was. A. Well, there was brick, cement, Portland cement, ground rock, and sand."

Witness Coleman also testified to the value of the material diverted, but his evidence was too indefinite. to base any conclusion on. Witness Nicholson testified that some of the material, to wit, 2½ tons of plaster, shipped in to the Pioneer Construction Company was hauled out on two jobs he was working on, and that he also got other plaster from the said construction company, but that it was taken away from him before he had a chance to use it, and used either in the bank building or in the other building the construction company was erecting. He also testified that the manager of the construction company demanded of him pay for the plaster he had used, and that he gave him a check for $26 in payment thereof. It will be noted that defendants are not given credit for this $26. This witness further testified that he saw them unload some of the material and pile it up at the bank building and afterwards take it across the street to the other building. Witness Crocker testified to the same effect. Witness Wolverton testified in part as follows:

"Q. Well, just state what you saw. A. I was there, I lived right there, my place of business was right there, on the Main street, and I would see them hauling material from the building, bank building, or lodge building, through the alley, to the other building, up the alley, across the street. Q. How frequently did you see that? A. Why, I

would see them—it was every day during the time they were building the other building."

The bank and the two lodges, after the completion of the building, settled with the contractor, the Pioneer Construction Company, paying it in full. The court found for the defendants, and his findings are fully sustained by the evidence, from any point presented in the case, and are approved here.

Plaintiff presents in his brief a question of estoppel, and attacks the sufficiency of the pleadings; but neither of these propositions go to the merits of the case from the viewpoint of this decision, and for that reason we find it unnecessary to discuss those assignments here. But we wish to say that we have carefully examined these two points as presented by plaintiff in his brief, and have reviewed the authorities cited, and are of the opinion that neither is well taken, even if the decision in this case should have hinged thereon.

For the reasons given, the judgment should be affirmed.

By the Court: It is so ordered.