FRANK WHEATLEY INDUSTRIES, INC. (Formerly Frank Wheatley Corporation) and A. C. Reeds, Jr., Plaintiffs in Error,

v.

OWENS–CORNING FIBERGLAS SUPPLY DIVISION, a Corporation, Defendant in Error.

No. 42437.

Supreme Court of Oklahoma.

March 3, 1970.

Thornton, Stamper & Dalton, by David M. Thornton and Andrew T. Dalton, Jr., Tulsa, for plaintiffs in error.

John P. Scott, Tulsa, for defendant in error.

LAVENDER, Justice.

In this appeal from a judgment establishing a lien in favor of one who supplied material to a sub-contractor one of the principal questions is whether or not, because of the circumstances in this particular case, the trial court erred in not holding the lien claimant was equitably estopped from asserting his lien. We have weighed the evidence and are of the view that the judgment of the trial court was not against the clear weight of the evidence.

The facts are briefly these: Plaintiff in Error, Frank Wheatley Industries, Inc. (formerly Frank Wheatley Corporation), hereafter called Wheatley, which was the owner of a certain tract of land within Tulsa County, Oklahoma, entered into a contract with A. C. Reeds, Jr. (who is also a plaintiff in error), and who shall be hereafter referred to as Reeds, by which the latter agreed to erect a building upon Wheatley's premises. Reeds, at the specific request of Wheatley, asked General Steel Building Company to submit a bid to sub-contract the job. That bid was the lowest and was accepted. General Steel purchased all of the insulation which went into the building from Owens-Corning Fiberglas Supply Division, a Corporation, the defendant in error and plaintiff in the trial court. The defendant in error shall herein be referred to as the lien claimant or Owens-Corning. The lien claimant shipped the material to the job site on March 8th. On March 9th it received a check from General Steel, its customer, for $800.00 as a payment on account. That check was deposited in the lien claimant's bank, but was returned marked "insufficient funds" on the 18th day of March. On the 17th day of March, Reeds paid the final payment due General Steel for the work. That check was in excess of $4,000.00. Thereafter the lien claimant, being unable to obtain payment of his claim tor material furnished ($2,581.06), filed a statement of lien for that amount in the office of the Court ·Clerk of Tulsa County, Oklahoma. That statement was timely filed and the notice required by that statute to be given the record owner of the premises was given. The statute authorizing the filing of such a lien statement is 42 O.S.1961, § 143. Quoting only the pertinent portions of that section, it provides, in part:

"Any person who shall furnish * * * material * * * may obtain a lien * * * by filing with the clerk of the district court of the county in which the land is situated, within ninety (90) days after the date upon which material was last furnished * * * a statement, verified by affidavit, * * *. The risk of all payments made to the original contractor shall be upon such owner until the expiration of the ninety (90) days herein specified, * * *."

In its answer in the trial court, as well as in its brief filed in this court, Wheatley has contended that the lien claimant knew, or at least was charged with knowledge, that General Steel would not pay for the material purchased by it from the lien claimant and which went into Wheatley's building. Such knowledge is alleged to have been imparted to Owens-Corning because, at the time the order for the material was received from General Steel, the latter was sixty (60) days behind in its account with Owens-Corning and because, when the material was thereafter delivered on the job site, the delinquency of General Steel in paying Owens-Corning had lengthened to six (6) months. It was further alleged that the lien claimant—when the $800.00 check of General Steel was returned from the bank—knew that it would have to look to the owner of the premises for payment. Wheatley alleged that it was not informed of the unpaid bill for the materials prior to its final payment under the

contract to General Steel and that it was thereby prejudiced by the alleged negligence and dilatoriness on the part of the lien claimant. In other words, as we understand Wheatley's position, when Owens-Corning, in the exercise of reasonable prudent business management realized, or should have realized, that General Steel was not going to pay for the material, it should have notified Wheatley so that the final payment to General Steel would be held up, or arrangements could be made, to insure payment of Owens-Corning's bill and that failing to so notify Wheatley should work an equitable estoppel against the lien claimant from thereafter asserting its statutory lien.

We have reviewed the record and the cases cited by the appellants. In each of the cases in which the principle of equitable estoppel has been applied in cases involving the enforcement of a statutory right to a material or mechanic's lien, circumstances have been quite different than they are in this cause. In Gulf Stream Lumber Co. v. Lathrop, Fla.App.1959, 108 So.2d 55, the unpaid claimant gave a receipt in which he acknowledged payment in exchange for the contractor's check which subsequently proved worthless. Some time elapsed in which the lien claimant could have notified the owner that his bill remained unpaid in spite of the written receipt evidencing the contrary. He failed to give such notice and he was held to be thereafter estopped from asserting his lien rights.

In an Oklahoma case cited by the appellants, Mager Mortgage Co. v. Ferguson (1953), 208 Okl. 304, 255 P.2d 938, the seller of a residence represented to the buyer that all bills for work on the house had been paid. In reliance upon this representation, the buyer purchased the home. Thereafter an unpaid bill turned up, which was paid by the seller, who took an assignment and then sued the home owner to establish the lien. This court held that under such circumstances the lien claimant/assignee was estopped from asserting his lien.

We know of no case which holds —as appellants would have us do here— that, under circumstances similar to those herein related, there arises a duty to speak up and inform the owner of premises that he will be asked to pay the unpaid material or labor bill and failing to so speak, the unpaid materialman or laborer will have, in effect, waived his right to his statutory lien. It would appear from the statute, quoted above, that the Legislature has very definitely placed the risk of loss upon the one in charge of paying the bills and for the benefit of whom the material was furnished or labor expended. We hesitate to disturb that clearly expressed obligation by recognizing that it may be varied by the solvency or insolvency of the primary debtor and the knowledge of such a situation on the part of the lien claimant. But regardless of that, after reviewing the record, we are unconvinced that Owens-Corning was actually chargeable with knowledge that its customer, General Steel Building, was not going to pay for the material when that "knowledge" is based on the mere fact that the sub-contractor had gotten delinquent in his account. We note in passing that the $800.00 check from General Steel to Owens-Corning, which came back from the bank marked "insufficient funds," was returned *after* the final payment had been made by Wheatley (through Reeds) to the sub-contractor, General Steel. We note also that, according to the testimony of Glosser, the manager of Owens-Corning, this was the first check of General Steel that was turned down when presented for payment in the period of two years or so that General Steel had been doing business with Owens-Corning.

We note also that the financial reputation of General Steel was brought to the attention of the prime contractor, Reeds, early in the transaction when he received a telephone call from a banker in another city to the effect that the manufacturer of the building would not ship it to General Steel unless it received assurance of being paid.

The elements which this court has said must exist before an equitable estoppel may be said to arise simply do not exist here. Defendants' Propositions I and II, in which "equitable estoppel" is argued, are not well taken.

■ Defendants' Proposition III is an attempt to have this court apply the doctrine of avoidable consequences. The argument is made that it would have been easy for the lien claimant to have minimized *its* loss in this matter if it had but notified the prime contractor or owner of the existence of the unpaid bill. This argument appears to be another way of urging equitable estoppel, but regardless of this, the fact remains the owner could have minimized *its* loss by withholding payment from the prime contractor until it was absolutely certain all the materials had been paid for. Instead of requiring (for example) of General Steel paid receipts indicating some evidence of payment of the material bills, it satisfied itself with inquiring of General Steel where the material was coming from. Incorrect (and misleading) information was then given to the defendants by General Steel. At that time the defendants had been informed that General Steel's credit was none too good. Perhaps this knowledge should have put the defendants upon further inquiry.

We know of no case where the statutory rights of a lien claimant have been deemed forfeited by the application of the doctrine of avoidable consequences and we are of the view that under the circumstances in this case that doctrine is inapplicable.

No authority is cited by defendants in support of their Proposition IV.

Proposition V is disposed of by our discussion of the other questions.

■ Proposition VI is: "The court erred in rendering judgment for Owens-Corning in that there is no showing that the intangible tax was paid." Even assuming application of the Intangible Tax Law to an account for material for which a statutory lien is sought, according to the record, the material was purchased in January and delivered in March of 1966. Owens-Corning filed its lien statement May 23, 1966, and its petition in this action on September 19, 1966. Under such circumstances, there was no period of time, prior to the filing of the plaintiff's petition, during which the account was required to be listed for assessment as an intangible. 68 O.S.Supp.1965, § 2507 (Renumbered from 68 O.S.1961, § 1507).

In Tulsa Defense Houses, Inc. v. Copeland (1952), 206 Okl. 260, 243 P.2d 696, we said, under a similar set of facts:

" * * *. We have held that the date of the filing of the petition is controlling as to the taxable status of the intangible, and where there was no intervening period in which the property could be returned for assessment the statute does not apply. Lewis v. Boice, 205 Okl. 189, 236 P.2d 258; Rutter v. Heatly, 198 Okl. 591, 180 P.2d 822."

For similar views, see Schaefer v. J. G. Stobaugh Supply Company (1955), Okl., 285 P.2d 380 and Western Surety Company v. Smith (1958), Okl., 330 P.2d 377. The case of McGill et ux. v. Cooper Supply Co. (1946), 196 Okl. 362, 165 P.2d 829, cited by the plaintiffs in error, is not in point. In that case the account had obviously existed a sufficient period of time prior to the filing of the action so that it was subject to the requirement of the statute that it be listed for intangible tax purposes. In that case the plaintiff alleged compliance, but because he failed to prove such allegation, upon the trial of the matter the judgment was vacated.

Judgment affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON and HODGES, JJ., concur.