CASHWAY LUMBER COMPANY, a Corporation, James S. Steph, Trustee in Bankruptcy for General Plumbing Company, a Corporation, and, Elwin T. Smith, Plaintiffs in Error,

v.

Lucian LANGSTON, Aubrey Langston, Grant Owen, Joe Brown Company, a Co-Partnership, and the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, Defendants in Error.

JOE BROWN COMPANY, a Corporation, Plaintiff in Error,

v.

CASHWAY LUMBER COMPANY, a Corporation, James S. Steph, Trustee In Bankruptcy for General Plumbing Company, a Corporation, Elwin T. Smith, Lucian Langston, Aubrey Langston, Grant Owen, and the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, Defendants in Error.

Nos. 42582, 42491.

Supreme Court of Oklahoma.

Nov. 3, 1970.

Rehearing Denied in No. 42491 Jan. 26, 1971.

James H. Duke, Milor & Thomas, Ardmore, for Cashway Lumber Co.; James S. Steph, Trustee in Bankruptcy for General Plumbing Co., and Elwin T. Smith.

Dyer & Dyer, Ardmore, for Joe Brown Co.

J. W. Dixon, Marietta, John B. Hayes, Watts, Looney, Nichols & Johnson, Oklahoma City, for Lucian Langston and Aubrey Langston.

McINERNEY, Justice:

These consolidated appeals by subcontractors arise from judgments relating to the construction of a house, the amount awarded subcontractors, and the denial of liens to the subcontractors.

Mr. and Mrs. Lucian Langston borrowed $12,000.00 from the Federal Home Administration (FHA) to build a house, giving in return therefor a promissory note, and a mortgage to the property on which they intended to build. As is customary in such loans, the funds were deposited to the Langstons' credit in a special account which required the "countersignature" of an FHA official on checks drawn therefrom. The Langstons then engaged a contractor named Grant Owen to build the house for that amount, which Owen commenced to do, drawing on materials and services by Cashway Lumber Co., General Plumbing Co., and Elwin T. Smith, and also by one Joe Brown Company, lien claimants herein.

The house was subsequently built, though not entirely by Owen, who for reasons not entirely evident from the record terminated his work thereon prior to its

completion. From the $12,000 FHA fund the Langstons eventually paid out some $8,362.91, primarily to their contractor, Owen, thereby leaving $3,637.09 still in their account.

The suppliers Cashway, General, and Smith subsequently brought this action (No. 42,491) against Owen and the Langstons, alleging that Owen had never paid them (at least not fully) for their materials and services rendered to him, and praying for personal judgment against Owen in the amounts allegedly owing, and for foreclosure of liens in like amounts against the Langstons' house. The Joe Brown Company soon brought a similar claim (No. 42,-582). Owen failed to answer, and Cashway, General, and Smith took a default judgment against him, the journal entry of which declared, in part,

> " * * * and the defendants Lucian Langston and Aubrey Langston, appearing by and through their counsel, Mr. J. W. Dixon, and thereafter, a witness having been sworn, and plaintiffs having made an offer of evidence in support of said motion, thereupon it was stipulated *in open court by* aforesaid counsel for the defendants Lucian Langston and Aubrey Langston that Default Judgment might be taken as prayed for in said motion against the defendant Grant Owen; and Grant Owen only * * * "

The Langstons' own answer consisted of a general denial, plus an allegation, in effect, that they were ignorant and innocent of any non-payment by Owen to the suppliers, and should not be penalized for Owen's failures therein.

At trial the suppliers Cashway, General, and Smith called the Court Clerk of Love County, who identified the introduced lien statements timely and properly filed by Cashway, General, and Smith for the materials and services sued for. One of their attorneys also testified as to mailing to the Langstons proper and timely notices thereof, by certified mail. Cashway-General-Smith finally introduced the default judgment against Owen, already quoted above,

which contained the "stipulation" thereto by the Langstons' attorney, and rested.

The lien-claimant Joe Brown Company, which had also taken a default judgment against Owen, offered the testimony of its President, Mr. Joe Brown, who testified in direct terms not only as to the proper and timely execution, filing, and the like, of his introduced lien statement, but further, that his Company had in fact actually furnished the described materials to the contractor, Owen, and physically delivered the materials to the construction site; that the bill therefore was still owing; that the intangible tax thereon had been paid.

The Langstons freely admitted the existence of their contract with Owen, but stated that they were not privy to his arrangements with his own sub-contractors or suppliers. Upon cross-examination by the Joe Brown Company, Mr. Langston specifically admitted to seeing concrete (the material furnished by the Joe Brown Company) *used during and in the construction.* Mr. Langston also testified to having spent $8,362.91 from his $12,000 FHA account, leaving a balance of $3,637.09 therein.

At the conclusion of the evidence, the trial court rendered personal judgment against the Langstons in the amount of $300 to the Joe Brown Company, and the residue of the FHA fund ($3,337.09 after deducting the $300 to Joe Brown) to be ratably divided amongst Cashway, General and Smith, all judgments to be satisfied solely from the residue of the FHA fund. The prayers for liens were denied. Thereafter these appeals were brought to this Court, where they have been consolidated. The lien-claimants urge that the trial court erred in denying them liens, and awarding for amounts less than the amounts duly owing. The Langstons contend there is insufficient evidence to justify an award in any amount and that the lien-claimants failed to prove anything other than the proper execution and filing of the lien statements themselves.

█ █ The Langstons' argument against the lien-claimants Cashway-General-Smith

in No. 42,491 is well taken. The testimony of these claimants' witnesses in fact established nothing more than that the lien statements had been publicized, mailed, and filed according to legal procedure. There was no testimony whatsoever from any witness that these claimants had in fact actually supplied the materials and services whose unpaid bills constituted the substantive debts allegedly underlying the lien statements. United States Fidelity and Guaranty Co. v. Belew, Okl., 325 P.2d 429, 431 (1957). Nor could the lien statements themselves be proof of the underlying debts; for while the statements are competent and introducible for the purpose of demonstrating that they had in fact been properly filed and perfected, they are clearly incompetent to demonstrate or prove the alleged debts underlying the lien statements. Claude Ricker Lumber & Paint Co. v. Barger, 195 Okl. 504, 158 P.2d 1021 (1945).

■ Neither can the Langston's "stipulation" to the default judgment of Cashway-General-Smith against Owen be utilized as an admission or evidence in the cause against the Langstons. At most, the judgment against Owen, the co-defendant, would establish only that *Owen* was indebted to these lien-claimants for materials for which judgment had been sought personally against Owen. The indebtedness of Owen would not be proof of the materials having been used in the construction of the Langston house, a necessary element in the case against the Langstons. De Bolt v. Farmers' Exchange Bank, 51 Okl. 12, 151 P. 686 (1915). In other words, the "stipulation" by the Langstons regarding the default against Owen simply has no evidentiary force against the Langstons, and therefore cannot be the basis for concluding the necessary additional factual question involved in the dispute between the Cashway-General-Smith claimants and the Langstons. The judgment rendered in No. 42,491 is reversed.

The Langstons' same objection against the Joe Brown Company, however, in No. 42,582, is not well taken, as the Langstons virtually concede. This lien-claimant, as stated above, went beyond merely introducing its lien statement and establishing the proper filing thereof; it also offered direct, competent testimony that the materials had in fact been furnished to Owen, and delivered to the construction site, but that the bill for the materials had not been paid.

■ The Langstons' only challenge to the Joe Brown Company's case is the rather weak suggestion that while this claimant established the delivery of its materials to the construction site, it failed to prove that the materials were actually *used* in the construction, a point which is, of course, the final link in the chain of proof to a right to a lien. Delivery to the construction site, however, is tantamount to a prima facie utilization of the material. De Bolt v. Farmers' Exchange Bank, supra; Goff v. Long-Bell Lumber Co., 142 Okl. 194, 286 P. 1 (1930). See also Anderson et al. v. W. L. Oakes Mfg. Co., 197 F.2d 725 (10th Cir., 1952). Furthermore Mr. Langston in effect admitted on cross-examination by the Joe Brown Company that this claimant's material *had* in fact been used in the construction. We therefore find that the claimant Joe Brown Company satisfactorily proved not only the proper perfection of its lien, but also its substantive right to recover for the debt underlying the lien statement. We hold that Joe Brown Company is entitled to obtain a lien, 42 O.S.1961, § 143, and reverse No. 42,582.

■ The definite amount to be awarded the Joe Brown Company, however, cannot be finally determined until the total amount of valid lien claims is established. Joe Brown Company, as the other lien claimants, is actually to receive not necessarily the full amount of its basic claim, but only that basic amount *times a factor* equalling the fraction of

$$\frac{\$12,000.00}{\text{total construction costs proved}},$$ and this factor obviously depends in part upon the recoverable construction cost claims to be

proved by the Cashway-General-Smith lien-claimants. The payments by the Langstons to Owen, without subsequent payment by Owen to satisfy the materialmen's claims, may not be used to reduce the "total construction costs proved" in determining the above fractional factor. The Langstons' payment to the contractor, Owen, is at the Langstons' risk in the event the contractor does not pay the materialmen. 42 O.S.1961, § 143; National Gas Co. v. Ada Iron & Metal Co., 185 Okl. 415, 93 P.2d 529, 530 (1939); Titus v. Electric Supply Co., 172 Okl. 408, 45 P.2d 515, 516 (1935).

■ ■ The fractional or proportionate rule of lien recovery is correctly recognized by the Joe Brown Company in its brief. When the construction price is stipulated in the contract, the property owner's *lien* obligations to the subcontractors under 42 O.S.1961, § 143, are limited to the stipulated price. Gibson v. Dunham, Okl., 346 P.2d 327 (1959). Therefore, where the total construction costs *exceed* the contracted price, the individual claims must be so proportionately reduced that, when retotaled as liens, they do not together exceed the original contract price. Ulrich Millwork Ltd. v. McGuire, 143 Okl. 16, 289 P. 264 (1930); J. B. Klein Iron & Foundry Co. v. A. B. Mays & Co., 76 Okl. 177, 184 P. 577 (1919). In this case, based on the claims indicated before us totaling $12,649.85 but still to be established in part at the new trial, the decimal fraction would be .948627. As indicated, however, the Joe Brown Company could receive a somewhat higher percentage should some or any of the Cashway-General-Smith claims again fail to be proven at retrial.

The trial court is therefore directed to enter judgment for Joe Brown Company in an amount to be determined at the conclusion of the evidence in the trial on remand, and to impose a lien on the property to satisfy the proportional debt. For this purpose, we direct the trial court to accept as already established the Joe Brown Company's basic claim of $1,153.20. The exact amount of the Joe Brown judgment will depend on the total claims ultimately established, and requires only the computation of that amount without further evidence from this claimant. Of course, the Joe Brown Company will have standing to challenge what it may feel are improper claims, and thereby decrease the fraction's denominator and, hence, enhance its ultimate percentage.

■ The Langstons have successfully defended the denial of a lien. The Joe Brown Company has likewise defeated the denial of a lien. These parties are, therefore, entitled to an award of an attorney's fee. 42 O.S.1961, § 176. The Langstons are awarded an attorney fee in the amount of $450.00 against the Cashway-General-Smith lien-claimants. The Joe Brown Company is awarded an attorney fee in the amount of $450.00 against the Langstons.

Case No. 42,491 is reversed and remanded for a new trial; Case No. 42,582 is reversed with directions to enter judgment for Joe Brown Company in accord with the views expressed herein.

All the Justices concur.