D. McGLUMPHY, d/b/a Mac's Electric
Supply, Appellee,

v.

JETERO CONSTRUCTION CO., INC., a
Texas Corporation, and Travelers In-
demnity Company, a corporation, Appel-
lants,

v.

Marvin LASATER, d/b/a Lasater
Electric Company, Appellee.

No. 48719.

Supreme Court of Oklahoma.

Dec. 5, 1978.

Rehearing Denied April 23, 1979.

Sanders, McElroy & Carpenter, Tulsa, for appellee, D. McClumphy, d/b/a Mac's Electric Supply.

Boyd & Parks by John W. Moody, Tulsa, for appellants.

Hall, Estill, Hardwick, Gable, Collingsworth & Nelson by Frank M. Hagedorn,

Tulsa, for appellee, Marvin Lasater, d/b/a Lasater Elec. Co.

LAVENDER, Vice Chief Justice:

Jetero Construction Co., Inc. (Jetero) was the general contractor on two separate construction projects owned by different entities. One, a motel, was located in Tulsa, Oklahoma. The other, an apartment complex, was located in Ft. Smith, Arkansas. Jetero's electrical sub-contractor on both projects was Marvin Lasater, d/b/a Lasater Electric Company (Lasater). D. McGlumphy, d/b/a Mac's Electric Supply (Mac's) was an electrical material supplier for Lasater. There were other construction projects where this same relationship existed between these entities of general contractor, electrical sub-contractor, and supplier.

Mac's claimed money was owed him for materials furnished for the Tulsa, Ft. Smith, and other projects, and subsequently filed materialman's lien against the Tulsa and Ft. Smith projects in the proper counties where the projects were located. Jetero claims it cancelled its sub-contracts on these two projects with Lasater for failure to keep the projects free of lien claims, and claims additional expense in securing other completion of the electrical subcontracts. Lasater claims monies owed to him for completed electrical work on the projects.

To relieve the two real estate developments from the recorded liens, Mac's entered into a written agreement with Jetero and Travelers Indemnity Company (Travelers). That agreement bound Jetero and Travelers to pay Mac's claims, or parts thereof, ultimately determined by adjudication to be a lien, with Mac's releasing its recorded liens. Suit by any of the parties to the agreement could be brought in the District Court of Tulsa County as to both projects. Other than litigating both claims in the same forum, there was no waiver of any objections, defenses, claims, rights, causes of action or remedies with Oklahoma law applicable to the Oklahoma and Arkansas law applicable to the Arkansas lien.

Mac's brings an action against Jetero and Travelers containing a cause of action for each of the two projects. He pleads the agreement and asks judgment for payment of materials furnished and attorney fees. Jetero denies and pleads certain defenses. By counterclaim and by making Lasater a third party defendant, Jetero seeks to impress particular funds paid by Lasater to Mac's with a trust to pay lienable items on the project generating that particular payment. Jetero also seeks Lasater to indemnify it from any recovery of Mac's against Jetero, and money judgment against Lasater for additional expenses required to complete Lasater's electrical sub-contract on the two projects. Lasater cross-petitions against Jetero for money judgment against Jetero on alleged performed, but unpaid, electrical work on the two projects.

Trial was to the court. Judgment entered for Mac's as sought in the petition, including attorney fees and denying any relief against that materialman, with Jetero and Travelers recovering a judgment in indemnity against Lasater for the amounts Jetero and Travelers were required to pay Mac's. Jetero recovered judgment against Lasater for cost of completing the electrical sub-contracts. Lasater recovered judgment against Jetero for unpaid work performed on the sub-contracts. Both Jetero and Lasater were denied attorney fees as against each other. Jetero and Travelers appeal.

■ Though Mac's original action is correctly based on the written agreement between that materialman, the general contractor and Travelers, we do not agree with Mac's contention his action was on a "judicial bond." The written agreement was an agreed-to mechanism whereby the real estate developments would be free of filed liens. Judicial energy was conserved by allowing litigation to proceed under the agreement in one forum with Oklahoma law applicable to the Oklahoma lien and Arkansas law applicable to the Arkansas lien. There were no waiver of objections, defenses, claims, rights, causes of action, or remedies under the laws of either state. Plead lien rights must be considered in this appeal.

As to Mac's recovery, Jetero's and Traveler's principal arguments are (1) material was sold on an open account and without a contract as to particular projects so as not to create a lien on individual projects; (2) lien trust fund statutes require payment on lienable items on the project generating the payment funds; and (3) failed to perfect the materialman's lien under Arkansas law on the Arkansas project through proper notice. As to Lasater's recovery, Jetero and Travelers contend there should be no recovery, for Lasater breached the sub-contract by failure to keep the projects free of lien claims.

Mac's contends (1) as a materialman, performing part of the sub-contract, he is entitled to a lien on the projects; (2) payments to him from the sub-contractor could be applied as agreed to the oldest purchase owed and not to the material sold to the project generating the payment; and (3) substantial compliance with the Arkansas law to perfect that lien.

Lasater adopts the same positions as Jetero and Travelers except as to Lasater's recovery; there contending, breach does not bar recovery for unpaid, but performed work.

■ For a materialman to be entitled to a lien under 42 O.S.1971, § 143 there need not be a direct contractual relation with the owner or the original contract, but it is essential that such materialman have knowledge of such a contract and furnish his materials in compliance with the original contract with the degree the materialman is removed from the original contractor being immaterial. *Rogers v. Crane Co., 180 Okl. 139, 68 P.2d 520 (1937).* In *Rogers, supra,* contention was made that notations or job numbers on invoices bore no legal significance and that fixtures were purchased by the sub-contractor in the course of ordinary trade with those purchases divorced from the improvement contract involving installation. This position was rejected. See also *Dolese Bros. Co. v. Andre-*copulas, 113 Okl. 18, 237 P. 844 (1925), Case 2.

In present case, general contractor argues the sale of electrical supplies to the electrical sub-contractor was in the ordinary course of trade with no connection to any particular contract to install or to any particular construction project. And, the material sale was without any contract and under an "open account" of the sub-contractor with the materialman.

■ The form of the indebtedness is not the vital element relative to a materialman lien. Open account, in legal as well as in ordinary language, means an indebtedness subject to future adjustment, and which may be reduced or modified by proof.[1] In *Liberty Plan Co. v. Francis T. Smith Lumber Co., Okl., 360 P.2d 500 (1961),* the indebtedness involving a materialman's lien was in the form of a note. The lien there was upheld. However, there is no materialman's lien if the seller relies wholly on the credit of the purchaser with no intention to resort to the lien statutes. *Schuman v. Teague, 195 Okl. 328, 156 P.2d 1010 (1945).* The definition of a sub-contractor, "as one who has entered into a contract, expressed or implied, for the performance of an act with a person who has already contracted for its performance," has been applied to materialman's liens. *Dolese Bros. Co., supra.* Selling the material to be used, delivering to the site with the sub-contract work being performed and some evidence that some of the material was used in the sub-contract work makes a prima facie case that the materials furnished went into the construction project without having to maintain a checker to see that every piece of material furnished went into the job. See *Anderson v. W. L. Oakes Mfg. Co., C.A.10th, 197 F.2d 725, 726.*

■ Mac's did have knowledge of the contracts with part of the material supplied being specially manufactured and delivered to each of the two separate projects. There

---

1. Black's Law Dictionary, Revised 4th Ed., p. 35 "ACCOUNT. Open," citing *James v. Leder-er-Strauss & Co.,* 32 Wyo. 377, 233 P. 137, 139.

was an effort, although not very efficient, to identify by project numbers the material picked up by the sub-contractor from the supplier. There was no direct evidence material was charged one project but used on another job. Though the form of indebtedness may have been considered as an open account, there is no evidence of the materials purchased from Mac's going into Lasater's general inventory for use on jobs other than those involved here. We find there was an implied contract[2] that Mac's was supplying electrical material to Lasater for Lasater to use in complying with his subcontract on particular jobs, and a materialman lien was permissible under 42 O.S.1971, § 143.[3]

By letter written by Mac's and agreed to by Lasater, the record shows an agreement between the two for any payment of Lasater to Mac's would be applied to the oldest purchase. Jetero says Lasater paid sufficient monies to Mac's to pay for the material supplied to the two projects if the monies were applied to the project generating the funds instead of the oldest outstanding item. Mac's required Lasater to pay by cashier checks, said to be caused by Lasater's checks often being returned for insufficient funds.

We agree generally with the authorities cited by Mac's that undesignated payments may be applied to debts owed to the same creditor at the discretion of that creditor.[4] However, those decisions were prior to or did not consider the construction trust fund statutes, 42 O.S.1971, §§ 152, 153.[5]

With *Bohn v. Divine, Okl.App., 544 P.2d 916 (1975)*, this jurisdiction has adopted a liberal construction of §§ 152, 153 as remedial legislation rather than penal, and that they were for the protection of the lienholders as well as the owner. "On their face the statutes, in creating a 'trust' of construction funds, appear to be protective in nature—protective of *the rights of all to whom an obligation is owed for the fund's proper disbursement.* For this reason, we construe the statutes liberally as though they are remedial statutes." (Emphasis added), *Bohn, supra.* This similar understanding of these sections is expressed in *Swan Air Conditioning Co. v. Crest Const. Corp., Okl.App., 568 P.2d 1330, 1335 (1977).* There, the opinion said:

2. *Ray F. Fischer Co. v. Loeffler-Green Supply Co., Okl., 289 P.2d 139 (1955),* syllabus by the court states:

"An 'implied contract' is a contract implied in fact, or, in the proper sense, one which arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract."

Also see 15 O.S.1971, § 133 defining implied contract.

3. 42 O.S.1971, § 143 reads in part:

"Lien by or through subcontractor. Any person who shall furnish any such material * * as a subcontractor * * * may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material * * and any person furnishing material to, such subcontractor may obtain a lien upon such land, or improvements, or both, for the same time, in the same manner, and to the same extent as the subcontractor, for the amount due him for such material * * * ."

4. *Titus v. Electric Supply Co., 172 Okl. 408, 45 P.2d 515, Case 2, (1935); United Benefit Life Insurance Co. v. Norman Lumber Co., Okl., 484 P.2d 527 (1971).*

5. 42 O.S.1971, §§ 152, 153 provide, in part:

"§ 152. Proceeds of building or remodeling contracts, mortgages or warranty deeds as trust funds for payment of lienable claims

(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.

(2) * * *

(3) * * * ."

"§ 153. Payment of lienable claims

(1) Such trust funds shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.

(2) * * * ."

"The construction trust statutes not only protect the lienholder, but also prevent the injustice of a double payment by an owner, trustee, contractor or subcontractor when placed in a situation comparable to that of appellant here."

We make application of the construction trust statutes to present case and determine there was owed to Jetero, the contractor, an obligation for construction funds paid to Lasater to be properly disbursed in payment of valid lienable claims on construction projects generating the payment fund.

 It is noted Lasater made some payment by cashier check, as requested by Mac's, with application made to the oldest purchase as they had agreed. This suggests the problem of following trust funds to their source and is discussed in NOTES, Liens: Mechanic's and Materialmen's Liens: Oklahoma's Trust Fund Provisions, 31 Okl. L.Rev. 199, 202. Here, we charge Mac's with notice or knowledge as to the source of the fund by which Lasater paid for the materials. The materialman, Mac's, knew Lasater's sub-contracts and construction projects for which materials were being purchased. This knowledge was one of the principal elements for allowing a lien under § 143. Mac's and Lasater had dealt with each other on many construction jobs with Mac's generally understanding Lasater's sub-contracts generated the monies to pay for the materials purchased for particular jobs. There is no evidence in the record of payments to Mac's coming from other sources, or any other sources being available to Lasater. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." 25 O.S.1971 § 13. The Law Review note quoted from *American Blower Corp. v. James Talcott, Inc., 18 Misc.2d 1031, 194 N.Y.S.2d 630, 640 (Sup.Ct.1959),* is particularly appropriate:

"A trust, statutory or otherwise, is governed by common law principles. Thus, trust funds do not lose their character as such merely by being deposited in a bank for the individual credit and account of a person whom the law, in effect, makes a trustee . . . * * * ."

Payment by cashier check does not change the character of any trust funds. With Mac's being charged with notice, he was required to inquire as to the source of the payments from Lasater sufficient to make proper distribution by payment of valid lienable claims with any monies impressed with the statutory trust by §§ 152, 153 rather than a blanket application to the oldest purchase, according to their letter agreement.

Jetero's and Traveler's brief argues an excess payment of a "Small or No Job" account as reflected by Mac's exhibit No. 23 that should be credited for payment of materials for the two projects principally involved here. We have difficulty making that determination under the myriad of accounting information and exhibits made a part of this appeal record, and remand for the making of the correct distribution or credit of payments of any determined to be construction trust funds under the views expressed in this opinion.

 The construction trust fund statutes reflect by title[6] and content they are an integral part of the lien laws of the State of Oklahoma. The record, briefs, or independent research indicate no comparable Arkansas law. Section 51–640, Arkansas Statutes, 1947 makes it unlawful and provides a penalty for failure to apply a contract payment on materials that could give rise to a materialman's lien, but creates no trust out of the construction proceeds.

 The intent of the written agreement sued upon, as determined by this opinion, is to apply Oklahoma law to the Tulsa

---

6. Laws, 1965, c. 58 shows title of S.B. No. 100, as originally passed to be:

"An Act relating to liens; making the proceeds of any building or remodeling contract trust funds in the hands of a contractor or subcontractor; providing for the disbursement thereof to the payment of lienable claims; and declaring an emergency."

project and Arkansas law to the Ft. Smith project, with no waiver of rights or remedies under the applicable law of either state as to this litigation. For these reasons, there is no application of a trust as to construction funds generated by the Ft. Smith project unless the Arkansas law is determined otherwise on remand.

 Validity of the materialman's lien on the Ft. Smith project is attacked for failure to give a notice of claim ten days before the filing of such a lien. § 51–608, Arkansas Statutes, 1947.[7] The lien, and the required notice, is sought to be sustained based on substantial compliance or estoppel. Although case law recognizes there could be an application of estoppel theory to this statute, *Robins v. East Arkansas Builders' Supply Co., 199 Ark. 1174, 137 S.W.2d 924 (1940)*, there is none in present case. The record shows no evidence of waiving or indication of no need to give notice. Rather, it indicates an oral request of Jetero that the lien filing be delayed pending possible payment of the materialman. Substantial compliance is similarly recognized in applying this statute,[8] but we fail to find that kind of compliance here. Though not expressly stating the § 51–608 notice must be in writing, that is implied by requiring, and does require, the notice to be served by an officer authorized to serve process in civil action with the return endorsed thereon. See *Scott v. LeGrande, 225 Ark. 1022, 287 S.W.2d 456 (1956)*, as to service, and *Hirsch v. Farris, 174 Ark. 1040, 298 S.W. 487 (1927); Ashdown Hardware Co. v. Hughes, 223 Ark. 541, 267 S.W.2d 294* for necessity of the notice. With reliance here on the same oral conversation for notice as the estoppel theory, there is no estoppel or

substantial compliance to sustain the Arkansas lien under § 51–608. We remand for the trial court to consider this ruling.

 We do not consider the unconstitutionality of the Oklahoma lien statute based on lack of notice and due process, for it is first argued in Jetero's reply brief. We cannot find the presenting of this constitutional issue to the trial court. No reference is made to it in the trial court's oral remarks as to judgment or in the journal entry of judgment. The petition in error of Jetero sets out precise points of law to be urged. This includes lack of notice required by the Arkansas lien statutes, but no reference to the constitutional issue as to the Oklahoma lien statutes.

 Jetero seeks reversal of judgment for Lasater against it under Lasater's cross-petition on unpaid, but performed, work under the electrical sub-contracts. As to the amount due, the trial court in oral suggestion from the bench of his proposed ruling indicated an agreement with the findings of fact submitted by Lasater. On appeal, Jetero says there is not competent evidence for that to be sustained, but points to no particular finding or develops no meaningful argument in support of its conclusion as to the trial court's error. Rather, Jetero seems to contend a breach of the sub-contracts by Lasater for not keeping the jobs free of lien claims with that condition necessary before Lasater would be entitled to payment for work performed under the sub-contract. Lasater says that condition for payment was removed by modification of the contract by Jetero's both requesting and acquiescing in Lasater remaining on the jobs for some period of time after knowing of the lien claims. In

7. "51–608. Notice of claim—Service and return.—Every person, except the original contractor, who may wish to avail himself of the benefit of the provisions of this act [§§ 51–601, 51–604—51–626], shall give ten [10] days' notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due. Such notice may be served by any officer authorized by law to serve process in civil actions or by any person who would be [a] competent witness. When served by an officer, his official return indorsed thereon shall be proof thereof, and when served by any other person, the fact of such service shall be verified by affidavit of the person so serving."

8. *Conway Lbr. Co. v. Hardin, 119 Ark. 43, 177 S.W. 408 (1915); Wildwood Amusement Co. v. Stout Lbr. Co., 178 Ark. 977, 12 S.W.2d 911 (1929).*

its reply brief, Jetero makes no response to the Lasater position. We refuse to reverse that portion of the trial court's judgment.

Having considered the construction trust fund statutes, §§ 152, 153, in this opinion as an integral part of the Oklahoma lien law, action to take on remand and the resulting judgment must be considered in allowing attorney fees to the party for whom judgment is rendered as allowed in § 176, with only the materialman's lien on the Tulsa project being involved. The attorney fee portion of the judgment is reversed and becomes a part of the remand.

Affirmed in part; reversed in part; and remanded.

HODGES, C. J., and WILLIAMS, IRWIN, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurs in result.