**ROOFING & SHEET METAL SUPPLY COMPANY OF TULSA, INC., Appellee,**

v.

**GOLZAR-NEJAD KHALIL, INC., Appellant,**

Charles Hurst d/b/a Hurst & Son Roofing Company, Defendant.

No. 82159.

Supreme Court of Oklahoma.

Sept. 24, 1996.

Bruce A. McKenna, Tulsa, for Appellant.

Tracy W. Robinett, Frank R. Patton, Jr., Patton, Brown, Tulsa, for Appellee.

SUMMERS, Justice:

The question is whether the Plaintiff, a subcontractor/supplier of roofing materials, has a valid lien for supplies used in repair of Defendants' building. We find that Plaintiff has been more than paid for lienable materials it furnished, and reverse the lower court's judgment foreclosing lien and awarding attorney fees. A novel question of law is involved.

Roofing and Sheet Metal Supply Co. Of Tulsa, Inc. (Supplier) is the plaintiff. Golzar–Nejad Khalil, Inc., owner of a business known as "Carpet City", is the landowner and Defendant (Owner or Carpet City). Owner contracted with Hurst, d/b/a Hurst & Son Roofing Co., to repair its roof. Hurst was a Defendant below but is not a party to the appeal.

Hurst and Supplier had an oral agreement whereby Supplier agreed to supply the material for the Carpet City job. Because Owner and Supplier were not convinced of Hurst's financial soundness, they agreed that all payments for supplies would be in the form of a joint payee check, naming as joint payees Hurst and Supplier.

In February, 1991, Hurst ordered supplies, presumably for the roof of Owner. Owner paid $6000.00 in the form of a joint payee check to Supplier and Hurst. Supplier agrees that it got that money. The supplies were delivered to Carpet City's place of business, but Hurst diverted approximately $5000.00 worth of the supplies to another job. In March 1991, Hurst ordered additional materials, totaling $3004.75. These materials were delivered to Carpet City's business, and were used in the re-roofing as per the contract. Owner, having discovered Hurst's earlier diversion, refused to pay.

Supplier filed a materialman's lien for the price of the March order, alleging that payment had not been made, and that Owner bore the responsibility of paying for the supplies to clear title to its property. Owner defended, alleging that because it paid $6000.00 for the first order and only $1000.00 worth of those supplies were used to roof his business, Supplier had been more than paid in full for all supplies used on Owner's roof. In other words, Owner had received $4,000 worth of materials from Supplier but had overpaid Supplier by some $2,000.00. Supplier responded that the February transaction is irrelevant to the March transaction, and that regardless of whether the first shipment of supplies was used on Owner's property, Owner is responsible for the payment of the second order under 42 O.S. 1991, §§ 141 and 143.

A non-jury trial was held, and Supplier was awarded judgment of $3004.75 plus foreclosure of the materialman's lien. Supplier requested that it be awarded attorneys fees and costs in the amount of $19,885.20. A hearing was held, in which Owner's main argument was that the fees requested were unreasonable and excessive in light of the amount in controversy. Although the trial court was concerned with the amount of attorneys fees, and the fact that Owner's attorneys had done no more than raise available defenses to the foreclosure, the trial court awarded the entire amount of fees and costs. From this Owner appealed.

The Court of Appeals, Division 1, in an opinion designated for publication, affirmed. We have granted certiorari. Although the magnitude of the attorney's fee award in relation to the amount in controversy certain-

ly caught our attention in the certiorari process, we find a novel and important question preserved and briefed on which the case must turn. It is whether a landowner may, for the purpose of responsibility to a supplier, treat the materials he receives and uses from that supplier as being under one single contract. We hold that he can, and reverse.

■ Materialman's liens are purely statutory. Title 42 O.S. 1991 Sections 141 and 143 govern the right to a materialman's lien.

> 141. Right to lien—Priority—Enforceability against property—Constructive notice
>
> Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, furnish material or lease or rent equipment *used on* said or *the* erection, alteration or *repair of any building*, improvement or structure thereon ... shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances ... and such lien shall follow said property and each and every part thereof, and be enforceable against the said property wherever the same may be found ... subsequent to the date of the furnishing of the first item of material .... (emphasis added)

Title 43 O.S. 1991 Section 143 applies to subcontractors, and reads in relevant part:

> Any person who shall furnish any such material ... may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and *to the same extent as the original contractor,* for the amount due him for such material, equipment and labor; ... by filing with the county clerk of the county in which the land is situated, within ninety (90) days after the date upon which material or equipment *used on said land* was last furnished or labor last performed ... The risk of all payments made to the original contractor shall be upon such owner until the expiration of *the ninety (90) days herein specified,* and no owner shall be liable to an action by such contractor until the expiration of said ninety (90) days, and such owner may pay such subcontractor the amount due him from such contractor for such labor, equipment used on said land

and material, and the amount so paid shall be held and deemed a payment of said amount to the original contractor. (emphasis added)

These statutes work together to provide protection from financial loss to contractors, subcontractors and materialmen, as well as to the owners of real property.

■ When a materialman agrees to furnish materials, knowing of a contract between the owner and the contractor, the materialman is entitled to a lien if the material is used in the construction. *Ryndak v. Seawell,* 13 Okla. 737, 76 P. 170 (1904). A materialman makes a prima facie case by showing (1) the material was sold to the contractor with knowledge of a contract between the owner and the contractor, (2) delivery of the materials to the site and (3) use of the materials in the project. *McGlumphy v. Jetero Constr. Co.,* 593 P.2d 76, 80 (Okla. 1978); *DeBolt v. Farmers' Exch. Bank,* 51 Okla. 12, 151 P. 686 (1915). According to Section 143, if the owner pays the contractor within 90 days, the owner suffers the risk of loss, i.e. the risk that the contractor will not pay the materialman. *See Cashway Lumber Co. v. Langston,* 479 P.2d 582 (Okla.1970). The owner may protect himself by withholding payment for 90 days, or by making a joint payee check to the contractor and the materialman. *See Frank Wheatley Ind., Inc. v. Owens–Corning Fiberglas Supply Div.,* 470 P.2d 986, 988 (Okla.1970). In order for the materialman to obtain a lien, he must show that the material sold to the contractor was used in the construction project. Delivery of the material to the construction site is one way to show that the material was used in the project. *Id.* at 585; *McGlumphy,* 593 P.2d at 80 (materialman makes a prima facie case by showing that materials were delivered to the site without having to show that every piece was used in the construction). The materialman may only have a lien for that amount of material used in the construction project. The owner may avoid a lien by showing that payment was made for the material or that the material was not used in the construction. *Id.*

And where the evidence shows that some of the material furnished for the erection

of a building upon certain premises has been diverted elsewhere, then before the materialman can recover for the material that actually went into the building there must be such evidence presented on that point that the court or jury can find therefrom with reasonable definiteness the part that went into the building, and its reasonable value, then the materialman will be entitled to a lien for that sum. . . .

*DeBolt v. Farmers' Exch. Bank*, 51 Okla. 12, 151 P. 686, 687 (1915).

■ Supplier argues that § 143 places upon the property owner the risk of all payments made to the original contractor (Hurst here) within 90 days. Owner paid Hurst and Supplier the full first $6,000 invoice within 90 days of delivery. What Supplier overlooks it is the express language used to allocate loss during the 90 day period. The statute gives the supplier a lien for material "used on said land" by filing its lien within 90 days after the material *"used on said land"* was last furnished. It goes on to place the risk of payments to the original contractor to be upon the owner until "expiration of *the ninety (90) days herein specified*." It is clear that the 90 days "herein specified" refers to the 90 days within which the Supplier may file its lien for payment of materials "used on said land." Under no circumstances does the statute provide that the Owner's land be subject to a lien for payment for materials which were never used on Owner's property.

■ Having settled that, the only question is whether Supplier can separate the two deliveries into two separate transactions, or is the Landowner entitled to treat all deliveries to his property by that Supplier for the roofing job as being under a single contract. Although we recognize that the lien statutes were enacted to give greater protection to materialmen, that protection does not extend to this situation.

Owner argues that this Court should consider both transactions as merely two parts of one contract. It asserts that in performance of a single contract, the materialman is only entitled to a lien for payment for that portion of supplies which were actually used in the roofing job. On the other hand, the Supplier asserts that the two transactions are completely separate; the over-payment for the first is irrelevant to the lack of payment for the second. Supplier also contends that it is irrelevant that most of the materials from the first order were not used in the roofing project. Because all of the materials from the second order were used in the roofing job, Supplier urges that he is entitled to full payment for the second order.

■ Materialmen are not required to file separate liens for each order of material. They may file one lien at the completion of their obligation. All orders are considered part of a whole contract as long as the material in each order is supplied for the same general purpose:

> Where a subcontractor furnishes material, all going to the one general purpose of constructing a building, though such material be ordered at different times, or under separate contracts, yet if the several deliveries are so connected together as to show that the parties had in contemplation that the whole should form but one, and not distinct matters of settlement, *the whole account may be considered as a unit, and a lien statement may be filed within the time limited after the last material was furnished.* (Emphasis added)

*Cushing Country Club v. Boardman Co.*, 381 P.2d 856, 862 (Okla.1963) quoting *Consolidated Cut Stone Co. v. Seidenbach*, 181 Okla. 578, 75 P.2d 442 (1937).

While this concept has not been judicially considered in light of today's scenario, we find no reason to deny its applicability when asserted by a property owner. Evenhanded application of a statute requires that we not construe it one way for the *benefit* of an affected party, and then construe it the other way when the same affected party would *suffer*. If the Supplier is entitled by the statute to consider all his separate deliveries to a job as being under one contract for the purpose of timely filing a lien claim, he cannot complain when the landowner wants to likewise consider all that supplier's deliveries to his job site as being under one contract for the purpose of paying for materials used on the job.

Here, the owner of the real property paid in full the amount of the first order by means of a joint payee check to both the contractor and the supplier. On a total bill of $9004.75 for the two deliveries, $6000.00 was paid. The remaining amount is unpaid, and is the amount on which the supplier seeks a lien. However, our case law, as well as Section 143, states that the materialman is entitled to a lien against the real property owner for that amount of material supplied *and actually used* in the construction project. There is no dispute that a large quantity of the original delivery was diverted and misused by the contractor. The total amount of Supplier's materials used in the Owner's Carpet City roofing job was more like $4,000, clearly less than $6000.00.

*Knapp v. Arko Interstate Elec. Co.*, 448 P.2d 996 (Okla.1968) supports this holding. In *Knapp* we explained the formula for determining the lien amount. The starting point is to determine the total amount owed as if nothing had been paid on the account. This first step requires that the entire bill of a supplier be considered as a whole. If that amount exceeds the amount paid the supplier is entitled to a lien for the remainder.

Application of the *Knapp* formula shows that Supplier is not entitled to a lien. The total amount owing by somebody on the bill is $9004.75. However, the total amount owed by Owner is for that amount of supplies purchased for and used in the roofing job. While the amount is not exact, the trial transcript shows that the amount is more like $4,000, less than $6000.00. The amount paid by the owner was $6000.00. Thus, Supplier is not entitled to a lien against the real property of Owner. Supplier must look elsewhere, either to the contractor Hurst or the owner of the other real property on which the supplies were used for payment.

■ Because we find that Supplier is not entitled to a lien, Owner's appeal of the attorneys fee award becomes moot. However, we must observe that the trial court's grant of over $19,000.00 in attorneys fees for a case resolved in a two and one-half hour nonjury trial in which the greatest possible judgment was $3004.75 was an abuse of discretion. On its face such a fee is unreason-able, and would shock the conscience of this Court. *State ex rel. Burk v. Oklahoma City*, 522 P.2d 612 (Okla.1973).

The Court of Appeals' opinion is vacated. The judgment of the District Court in favor of Roofing & Sheet Metal Supply and against Golzar–Nejad–Khalil, Inc. (Owner herein) is reversed. On remand the District Court shall enter judgment for the defendant Golzar, Inc.

■ Owner has moved for attorney fees in the event it should be successful on appeal. The prevailing party is entitled to a reasonable fee in lien foreclosure cases such as this. 42 O.S. 1991 § 176. On remand the District Court shall determine, after an adversary proceeding, reasonable counsel fees for both trial and appeal-related services to which the prevailing Defendant Golzar, Inc. shall be entitled against Plaintiff Roofing & Sheet Metal Supply Co. Of Tulsa, Inc.

KAUGER, V.C.J., and HODGES, HARGRAVE and WATT, JJ., concur.

LAVENDER and OPALA, JJ., concur in result.

WILSON, C.J., and SIMMS, J., concur in part; dissent in part.