2002 OK 35

**In re Matthew Wayne HARRIS, Debtor,**

**Paul Stevens and Latricha Stevens, Plaintiffs,**

v.

**Matthew Wayne Harris, Defendant.**

No. 97,286.

Supreme Court of Oklahoma.

May 7, 2002.

James L. Bentley, Del City, OK, for Plaintiffs.

D. David Sisson, Norman, OK, Elaine M. Dowling, Oklahoma City, OK, for Defendant/Debtor.

KAUGER, J.

¶ 1 We are asked to answer two ques-

tio'ns:[1] 1) whether an owner of real property who places trust funds with a general contractor pursuant to the Oklahoma construction trust fund statutes, 42 O.S.2001 §§ 152[2] and 153,[3] is a beneficiary of the statutory construction lien scheme to the extent of any lienable claims arising from the contract between the owner and the general contractor; and 2) whether the Oklahoma construction trust fund statutes, 42 O.S.2001 §§ 152 and 153, create a fiduciary relationship between the owner of real property and a general contractor to the extent that there are lienable claims arising from a construction contract? We answer both questions in the affirmative.

1. The Bankruptcy Court certified the following questions:
    1) Is an owner of real property, who has contracted with a general contractor for a building or remodeling project on the owner's property, entitled to beneficiary status under the Oklahoma Construction Fund statutes, OKLA. STAT. tit. 42, §§ 152 & 153, if and to the extent there are lienable claims due and owing by reason of such building or remodeling contract?
    2) Do the Oklahoma construction fund trust statutes, OKLA. STAT. tit. 42 §§ 152 and 153, create a fiduciary relationship as between a contractor and the owner of real property upon which building or remodeling has occurred pursuant to a contract between such contractor and owner, to the extent there are lienable claims due and owing by reason of such building or remodeling contract?
    The questions are reformulated pursuant to 20 O.S.2001 § 1602.1.

2. Title 42 O.S.2001 §§ 152 provides:
    "(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.
    (2) The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor by reason of such building or remodeling contract.
    (3) The amount received by any vendor of real property under a warranty deed shall, upon receipt by the vendor, be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such vendor or his predecessors in title by

¶ 2 Our determination that an owner of real property placing trust funds with a general contractor pursuant to the Oklahoma construction trust fund statutes, 42 O.S.2001 §§ 152 and 153, is a beneficiary of the statutory construction lien scheme to the extent of any lienable claims arising from the contract between the owner and the general contractor is supported by: 1) our decisions in *Manley v. Brown*, 1999 OK 79, 989 P.2d 448; *Sandpiper North Apartments, Ltd. v. American Nat'l Bank & Trust Co. of Shawnee*, 1979 OK 124, 600 P.2d 332 and *Roofing & Sheet Metal Supply Co. of Tulsa, Inc.* v. *Golzar-Nejad Khalil, Inc.*, 1996 OK 101, 925 P.2d 55; 2) federal jurisprudence construing

reason of any improvements made upon such property within four (4) months prior to the delivery of said deed."
Section 152 was last amended in 1968. Therefore, reference is made to the current statute.

3. Title 42 O.S.2001 § 153 provides:
    "(1) The trust funds created under Section 152 of this title shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.
    (2) Any person willfully and knowingly appropriating such trust funds to a use not permitted by subsection (1) of this section, upon conviction, shall be guilty of the felony of embezzlement and shall be punished by imprisonment in the State Penitentiary for a period not to exceed five (5) years or by a fine not to exceed Ten Thousand Dollars ($10,000.00), or by both such imprisonment and fine.
    (3) If the party receiving any money under Section 152 of this title is an entity having the characteristics of limited liability pursuant to law, such entity and the natural persons having the legally enforceable duty for the management of the entity shall be liable for the proper application of such trust funds and subject to punishment under subsection (2) of this section. For purposes of this section, the natural persons subject to punishment shall be the managing officers of a corporation and the managers of a limited liability company.
    (4) The existence of such trust funds shall not prohibit the filing or enforcement of a labor, mechanic or materialmen's lien against the affected real property by any lien claimant, nor shall the filing of such a lien release the holder of such funds from the obligation created under this section or Section 152 of this title."
Section 153 remains unaltered since the contract was entered between the owner and the general contractor except to the extent that subsection 3 of the statute refers to corporate liability. Therefore, reference is made to the current statute.

Oklahoma's construction trust fund statutes; and 3) the majority of extant jurisprudence addressing the issue of the beneficiary status of owners under similar statutory schemes.

¶3 We hold that 42 O.S.2001 §§ 152 and 153 [4] create a fiduciary relationship between the owner of real property depositing construction funds with a general contractor and the contractor to the extent that there are lienable claims arising from a construction contract. In so doing, we align ourselves with the jurisdictions recognizing that statutes utilizing trust fund language like that of 42 O.S.2001 §§ 152 and 153 create a confidential affinity and with those federal decisions construing the Oklahoma statutes and acknowledging the statutorily created fiduciary relationship.

## FACTS

■ ¶4 The debtor/defendant, Matthew Wayne Harris (Harris/debtor/contractor), is the sole proprietor of Harris Construction (the construction company). On July 29, 1999, the plaintiffs, Paul and Latricha Stevens (Stevens/owners), contracted with the construction company to repair and enlarge their Del City home.[5] Initially, the contract price totaled $90,000.00 and required three $30,000.00 disbursals—a first payment, a second payment once the home was "dried in", and a final payment. By agreement of the parties, the contract was modified subsequently to include additional work by the

construction company and to boost the price to $100,000.00.

¶5 The owners paid Harris Construction $30,000.00 on August 6, 1999, and construction began in October. After the foundation was poured in November, the owners made additional payments totaling $40,000.00. Because construction was never completed, the Stevens did not disburse the final $30,000.00.

¶6 Northwest Roofing Company (roofer/subcontractor) filed a mechanics's and materialmen's lien against Harris Construction and the Stevens' home on February 3, 2000. In response, the Stevens filed a breach of contract suit in district court against the construction company on June 7, 2000. Five months later, the contractor d/b/a Harris Construction filed a voluntary petition in bankruptcy.

■ ¶7 On February 12, 2001, the Stevens filed an adversary pleading in the bankruptcy court seeking $70,000 for breach of contract and a determination that the damages are nondischargeable pursuant to 11 U.S.C.1998 § 523(a)(4) [6] for fraud or defalcation while acting in a fiduciary capacity.[7] A finding in favor of the owners under § 523(a)(4) requires that they demonstrate a fiduciary relationship with the debtor and the commission of a defalcation within the confines of the relationship.[8] Recognizing that state law is important in determining the existence of a fiduciary relationship,[9] the bankruptcy court

---

4. Title 42 O.S.2001 § 152, see note 2, supra; 42 O.S.2001 § 153, see note 3, supra.

5. We agree with Harris that in answering a certified question, the Court does not presume facts outside those offered by the certification order. *Jones v. University of Central Oklahoma*, 1995 OK 138, ¶5, 910 P.2d 987. However, we note that the Stevens have not asked the Court as did the plaintiff in *Jones* to add or delete facts which might alter the legal conclusion reached on certiorari. Further, we note that the record presented supports the Stevens' contention that their home required repairs because of damages incurred during the May 3, 1999, tornado. Finally, Harris does not dispute this contention.

6. 11 U.S.C.1998 § 523(a)(4) provides:

"(a) A discharge under section 727, 1141, 1128(a), 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ..."

7. Currently, the Stevens are in danger of losing their home. Although no sheriff's sale has been conducted, judgment has been entered against the owners in foreclosure. Further, the roofer's lien remains unpaid.

8. A defalcation within the meaning of 11 U.S.C. 1998 § 523(a)(4), see note 6, supra, is misappropriation of trust funds or money held in a fiduciary capacity—the failure to properly account for such funds. *In re Banks*, 263 F.3d 862, 869 (9th Cir.2001); *In re Hemmeter*, 242 F.3d 1186, 1190 (9th Cir.2001). See also, *State ex rel. Oklahoma Bar Ass'n v. Cross*, 1996 OK 131, ¶5, 932 P.2d 1107.

9. *In re Young*, 91 F.3d 1367, 1370 (10th Cir. 1996). See also, L. Ponoroff, "Construction

certified questions to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.2001 § 1601 *et seq.*, on January 22, 2002. We set a briefing cycle which was completed on March 5, 2002.

## I.

¶ 8 AN OWNER OF REAL PROPERTY PLACING TRUST FUNDS WITH A GENERAL CONTRACTOR PURSUANT TO THE OKLAHOMA CONSTRUCTION TRUST FUND STATUTES, 42 O.S.2001 §§ 152 AND 153, IS A BENEFICIARY OF THE STATUTORY CONSTRUCTION LIEN SCHEME TO THE EXTENT OF ANY LIENABLE CLAIMS ARISING FROM THE CONTRACT BETWEEN THE OWNER AND THE GENERAL CONTRACTOR.

¶ 9 Both Stevens and Harris recognize that the Oklahoma lien construction statutes protect subcontractors and suppliers performing work under a contract between an owner of real property and a contractor.[10] The parties differ in that the homeowners assert that the same statutory scheme—42 O.S.2001 §§ 152 and 153,[11] benefits owners placing funds in trust with contractors for the payment of lienable claims. In contrast, Harris contends that the clear language of the statutes requiring that funds be held for the payment of "lienable claims" requires a construction of the statute limiting protection to those entitled to payment for work completed or supplies furnished, *i.e.* subcontractors and suppliers. Essentially, the contractor argues that owners simply have no standing to assert a claim arising under the lien construction statutes.[12] We disagree.

¶ 10 We have not addressed the precise issue of whether owners enjoy beneficiary status under 42 O.S.2001 §§ 152 and 153. Nevertheless, we have promulgated opinions instructive on the issue.

¶ 11 The primary issues presented in *Manley v. Brown*, 1999 OK 79, 989 P.2d 448 involved the right of clients to proceed in a malpractice action against attorneys and a law firm for allegedly substandard performance in rendering trial and appellate service in defending against a subcontractor's lien claim. In discussing cases demonstrating that a subcontractor must take affirmative steps to perfect a claim against a contractor for misapplied trust funds, we considered these same teachings as they related to owners' claims against contractors. The opinion provides at ¶ 19:

"... [The cases] *do not teach* that the merits of an *owner's claim against its contractor* depend on a *subcontractor's* compliance with the notice requirements of the lien statute. Whether a *subcontractor* must give the § 142.1 notice (when it is due) for an *owner* to recover against its *contractor* who is alleged to have misapplied construction trust funds is a question unanswered by case law extant at the critical time here ... In sum, even if notice was the owner's due, the legal impact of a subcontractor's failure to give that notice upon a contractor's liability to the owner *was then* (and is now) *far from clearly settled.*" [Emphasis in original.]

The need for the subcontractor's statutorily required lien notification was left undecided in *Manley* to the extent that it affected the owner's rights against a contractor. Nevertheless, the opinion recognizes that an owner may benefit, as against a contractor, from

---

Claims in Bankruptcy: Making the Best of a Bad Situation," 11 Bkr.Dev.J. 343 (1994–95).

10. *Manley v. Brown*, 1999 OK 79, ¶ 18, 989 P.2d 448; *In re Tefertiller.*, 1989 OK 60, ¶ 9, 772 P.2d 396.

11. Title 42 O.S.2001 § 152, see note 2, supra; 42 O.S.2001 § 153, see note 3, supra.

12. The contractor's contention that the owners only protection in the mechanics and materialmen's statutes is to be found in 42 O.S.2001

§§ 142.1 and 143 is unpersuasive. These statutes deal with the necessity of notice to the property owner from the sub-contractor prior to the enforcement of a sub-contractor's lien against the owner's property. At issue here is not the relationship between the owner and the subcontractor, but the protections which an owner may receive in its dealings with a general contractor.

the statutory protections of Oklahoma's construction trust fund lien statutory scheme.

¶ 12 In *Sandpiper North Apartments, Ltd. v. American Nat'l Bank & Trust Co. of Shawnee*, 1979 OK 124, 600 P.2d 332, owners of real property and a contractor (collectively, owners) entered into three agreements with a subcontractor. The subcontractor assigned the proceeds of progress payments to its banker as security for financing the subcontracts. The owners made progress payments on the subcontractor's work jointly to the subcontractor and to the bank. A portion of the payments were diverted when the bank applied monies to debts unassociated with the construction projects. Claiming protection under 42 O.S.1971 §§ 152 and 153,[13] the owners sued to recover the amounts paid to the subcontractor. We held in favor of the owners in *Sandpiper* determining that the proceeds of the construction project were subject to the statutory trust provisions, 42 O.S.1971 §§ 152 and 153, to the extent of the valid lienable claims. In *Sandpiper*, both the owner of the real property and the contractor benefitted under the construction trust fund statutes.

¶ 13 We considered the position of owners of real property under other provisions of Oklahoma's mechanics and materialmen's lien laws in *Roofing & Sheet Metal Supply Co. of Tulsa, Inc.* v. *Golzar–Nejad Khalil, Inc.*, 1996 OK 101, 925 P.2d 55. The issue presented was whether the subcontractor/supplier of roofing materials was entitled to a lien against the owners' property pursuant to 42 O.S.1991 §§ 141 and 143.[14] Recognizing that materialmen's liens are purely statutory, we stated in *Golzar–Nejad* that such statutes work together "to provide protection from financial loss to contractors, subcontractors and materialmen, **as well as to the owners of real property**." [Emphasis supplied.] Determining that owners were entitled to protection under the statutory scheme, we held that the owner could only be billed for the supplies actually utilized in the roofing job. In so doing, we acknowledged the principle that: "[e]venhanded application of a statute requires that we not construe it one way for the *benefit* of an affected party, and then construe it the other way when the same affected party would *suffer*." [Emphasis in original.] The mechanic's and materialmen's statutes guaranteed the sub-contractor a lien for all materials utilized in the roofing job. However, the owner of real property benefitted from the same lien laws

**13.** Although the statutory provisions have been amended since our decision in *Sandpiper North Apartments, Ltd. v. American Nat'l Bank & Trust Co. of Shawnee*, 1979 OK 124, 600 P.2d 332, the language relating to trust funds remains substantially unchanged. Title 42 O.S.1971 § 152 provides in pertinent part:

"(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract...."

Title 42 O.S.1971 § 153 provides in pertinent part:

"... (2) Such trust funds shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid...."

**14.** Title 42 O.S.2001 §§ 142 and 143 are the mechanisms through which a subcontractor or supplier may file a valid lien against real property. Respectively, they provide in pertinent part:

"Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, furnish material or lease or rent equipment used on said land for the erection, alteration or repair of any building, improvement or structure thereon or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements ... shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances...."

"Any person who shall furnish any such material or lease or rent equipment used on said land or perform such labor as a subcontractor, or as an artisan or day laborer in the employ of the contractor, may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material, equipment and labor ... The risk of all payments made to the original contractor shall be upon such owner until the expiration of the ninety (90) days herein specified, and no owner shall be liable to an action by such contractor until the expiration of said ninety (90) days ...."

The statutes remain unchanged from their 1991 version. Therefore, references are to the current statutory compilation.

and was obligated to pay for only those materials utilized on the construction project.

¶ 14 Our decisions in *Manley, Sandpiper* and *Golzar–Nejad* place us squarely in the majority camp which recognizes that owners enjoy the protection offered by construction trust fund statutes.[15] These courts reason that the primary purpose of such statutory schemes is to protect the owner involved in a fiduciary relationship with the contractor.[16] The property owner is considered the direct beneficiary of the statutorily created trust because of the owner's potential for double liability if the contractor does not pay laborers and materialmen [17]—the precise situation presented here as the owners must satisfy the subcontractor's lien although they have previously paid these funds to the contractor. Although these decisions are not binding, we do note that two federal courts considering the effect of our lien statutes have determined that owners are intended beneficiaries of the statutory trust provisions.[18]

¶ 15 We hold that an owner of real property placing trust funds with a general contractor pursuant to the Oklahoma construction trust fund statutes, 42 O.S.2001 §§ 152 and 153,[19] is a beneficiary of the statutory construction lien scheme to the extent of any lienable claims arising from the contract between the owner and the general contractor.

II.

¶ 16 TITLE 42 O.S.2001 §§ 152 AND 153 CREATE A FIDUCIARY RELATIONSHIP BETWEEN THE OWNER OF REAL PROPERTY DEPOSITING CONSTRUCTION FUNDS WITH A GENERAL CONTRACTOR AND THE CONTRACTOR TO THE EXTENT THAT THERE ARE LIENABLE CLAIMS ARISING FROM A CONSTRUCTION CONTRACT.

■ ¶ 17 The owners contend that the duty imposed on the contractor by 42 O.S. 2001 §§ 152 and 153 [20] to hold funds in trust for the payment of sub-contractors and suppliers creates a fiduciary duty between the owner and the contractor to the extent there are lienable claims due and owing by reason of a building or remodeling contract. The contractor argues that there is nothing to suggest facts sufficient to find a confidential relationship, *i.e.* the substitution of one party's will for that of another.

¶ 18 Courts disagree on whether mechanic's lien statutes create an enforceable trust from which a fiduciary relationship between property owners and contractors arises.[21] Each decision is based, at least in part, on

---

15. *Matter of Thomas,* 729 F.2d 502, 505 (7th Cir.1984); *Matter of Cross,* see note 23, infra; *Carey Lumber Co. v. Bell,* see note 18, infra [Oklahoma lien statutes benefit subcontractors, materialmen as well as lenders and owners.]; *First Commercial Corp.* v. *First Nat'l Bancorporation, Inc.,* 572 F.Supp. 1430, 1433 (D.Colo.1983); *General Elec. Supply Co.* v. *Epco Constrs., Inc.,* 332 F.Supp. 112, 115 (S.D.Tx.1971); *Atlantic Refining Co.* v. *Continental Casualty Co.,* 183 F.Supp. 478, 484 (W.D.Penn.1960); *Matter of Evans,* 1 B.R. 229–30 (Bkrtcy.S.D.Fla.1979); *Maull v. Stokes,* 31 Del.Ch. 188, 68 A.2d 200–01 (1949); J. Dawson, "1409 Harvard Law Review", 87 Harv.L.Rev. 1409, 1451 [The owner is the ultimate beneficiary of lien statutes.]. But see, *In re Marino,* 115 B.R. 863, 869 (Bkrtcy.D.Md. 1990); *In re Griffin,* 111 B.R. 42–43 (N.D.N.Y. 1990).

16. *In re Specialized Installers, Inc.,* 12 B.R. 546, 551 (Bkrtcy.D.Colo.1981); *Maull v. Stokes,* see note 15, supra.

17. *First Commercial Corp.* v. *First Nat'l Bancorporation, Inc.,* see note 15, supra; *In re Specialized Installers, Inc.,* see note 16, supra.

18. *Carey Lumber Co.* v. *Bell,* 615 F.2d 370, 373 (5th Cir.1980) [Under Oklahoma law, the lien trust statutes benefit subcontractors and materialmen as well as lenders and owners. The opinion has been abrogated only to the extent that it relates to federal law and culpability on the dischargeability issue.]; *Matter of Cross,* see note 23, infra [Oklahoma lien trust statutes imposed express fiduciary duties on the contractor for the benefit of the home buyer.].

19. Title 42 O.S.2001 § 152, see note 2, supra; 42 O.S.2001 § 153, see note 3, supra.

20. Title 42 O.S.2001 § 152, see note 2, supra; 42 O.S.2001 § 153, see note 3, supra.

21. Cases finding such a relationship include: *Carey Lumber Co.* v. *Bell,* see note 18, supra; *In re Romero,* 535 F.2d 618, 621 (10th Cir.1976); *In re Morris Ketchum, Jr. & Assoc.,* 409 F.Supp. 743–44 (S.D.N.Y.1975); *In re Manley,* 135 B.R. 137, 140 (N.D.Okla.1992); *In re Turner,* 134 B.R. 646, 655 (N.D.Okla.1991); *In re Wesley,* 5 B.R. 172–73 (Bkrtcy.W.D.Okla.1980); *Maull v. Stokes,* see note 15, supra; *In re Weedman,* 65 B.R. 288,

the language of the state statute.[22] General statutes merely imposing criminal penalties for failure to properly dispose of funds have not been found to create a fiduciary relationship.[23] Nevertheless, where statutes expressly designate monies received by a contractor as "trust fund" monies[24] or where some other statutorily imposed professional requirement exists for general contractors,[25] the courts have held an express trust arises imposing fiduciary responsibilities on the contractor in favor of the property owner. Cases with statutes similar to the Oklahoma scheme find the existence of a fiduciary obligation between owners/purchases of real property and general contractors.[26] Further, the federal courts having the opportunity to construe Oklahoma's mechanic's and materialman's lien statutes have determined that a fiduciary relationship exists between owners and their contractors.[27]

¶ 19 The contractor's argument that the relative bargaining powers between the parties controls whether a confidential relationship exists ignores the fact that a fiduciary relationship may arise from statute as was acknowledged in *Lowrance v. Patton*, 1985 OK 95, 710 P.2d 108.

¶ 20 *Lowrance* involved an action by the administrator of a veteran's estate against the head of the Oklahoma Veterans Center to recover the veteran's funds which were kept in a special account at the Veterans Center and which were improperly paid to the veteran's son upon his father's death. At issue in

291 (Bkrtcy.W.D.Ky.1986); *In re Schultz*, see note 24, infra; *In re Edmond*, 5 B.R. 172–73 (Bkrtcy.W.D.Okla.1980); *Heyerdale v. Haneman*, 170 So.2d 401, 403 (La.App. 4th Cir.1964), *writ refused*, 247 La. 486, 172 So.2d 293 (1965);. See also, *Matter of Cross*, note 23, infra, in which the 5th Circuit noted that the Oklahoma lien trust statutes imposed express fiduciary duties on the contractor for the benefit of a home buyer.

Cases holding that no fiduciary relationship exists between contractors and owners include: *Matter of Cross*, see note 23, infra; *In re Pedrazzini*, see note 23, infra; *Matter of Dloogoff*, see note 23, infra; *In re Thornton*, see note 23, infra; *In re Shaffer*, 206 B.R. 95, 98 (Bkrtcy.M.D.Penn. 1997); *In re Sigler*, 196 B.R. 762, 765 (Bkrtcy. W.D.Ky.1996); *In re Gropp*, 153 B.R. 350–51 (Bkrtcy.M.D.Fla.1993); *In re Marino*, 115 B.R. 863, 869 (Bkrtcy.D.Md.1990); *In re Davis*, 115 B.R. 346, 349 (Bkrtcy.N.D.Fla.1990); *In re Dobbs*, 115 B.R. 258, 266 (Bkrtcy.D.Idaho 1990); *In re Potter*, 88 B.R. 851, 853 (Bkrtcy.N.D.Ill. 1988); *In re Gould*, 65 B.R. 87, 89 (Bkrtcy. N.D.N.Y.1986); *In re Mettetal*, see note 23, infra; *In re Crea*, 31 B.R. 239, 244 (Bkrtcy.D.Minn. 1983); *In re Wilson*, 30 B.R. 91, 93 (Bkrtcy. E.D.Tenn.1983); *Davis v. Carpenter*, 247 Ga. 156, 274 S.E.2d 567–68 (1981).

**22.** *In re Sigler*, see note 21, supra; *In re Ballard*, 26 B.R. 981, 984 [No trust imposed in absence of statutory lien law.]; T. Missling, "Effect of a Subsequent Bankruptcy on Construction Project Payments Issue: Is a Payment Made by a General Contractor to its Subcontractor or Supplier, Before Going into Bankruptcy, Avoidable as a Preferential Transfer?", 11–Jan. Constr.L. 10–11 (1991).

**23.** *Matter of Cross*, 666 F.2d 873, 880 (5th Cir. 1982); *In re Pedrazzini*, 644 F.2d 756, 758 (9th Cir.1981); *Matter of Dloogoff*, 600 F.2d 166, 168 (8th Cir.1979); *In re Thornton*, 544 F.2d 1005, 1007 (9th Cir.1976); *In re Sigler*, 196 B.R. 762,

765 (Bkrtcy.W.D.Ky.1996); *In re Gropp*, see note 21, supra; *In re Mettetal*, 41 B.R. 80, 89 (Bankr. D.Tenn.1984); *In re Crea*, see note 21, supra. But see, *In re Weedman*, note 21, supra.

**24.** *In re Schultz*, 46 B.R. 880, 886 (Bankr.D.Nev. 1985); *In re Ballard*, 26 B.R. 981, 984 (1983); T. Missling, "Effect of a Subsequent Bankruptcy on Construction Project Payments Issue: Is a Payment Made by a General Contractor to its Subcontractor or Supplier, Before Going into Bankruptcy, Avoidable as a Preferential Transfer?," see note 22, supra. But see, *In re Marino*, note 21, supra [Trust language in statute operated only for benefit of subcontractors and suppliers.].

**25.** *In re Romero*, 535 F.2d 618, 621 (10th Cir. 1976) [New Mexico licensing statute for construction contractors imposed fiduciary duty on contractor.].

**26.** *In re Romero*, see note 25, supra; *In re Morris Ketchum, Jr. & Assoc.*, see note 21, supra; *In re Edmond*, see note 21, supra; *Heyerdale v. Haneman*, see note 21, supra; *Maull v. Stokes*, see note 18, supra. See also, *In re Turner*, 134 B.R. 646, 655 (Bkrtcy.N.D.Okla.1991) [In suit brought by materialman, bankruptcy court recognized that contractor was acting in a fiduciary when it received sums to pay materialman from owner].

**27.** *Carey Lumber Co. v. Bell*, see note 18, supra; *In re Manley*, see note 21, supra; *In re Turner*, see note 21, supra. See also, *Matter of Cross*, note 23, supra, in which the 5th Circuit noted that the Oklahoma lien trust statutes imposed express fiduciary duties on the contractor for the benefit of a home buyer. But see, *In re Baird*, 114 B.R. 198, 203 (9th Cir.BAP (Ariz.)1990) [Determining that trust arose only in favor of subcontractors and suppliers.].

*Lowrance* was 72 O.S.1981 § 222 [28] which authorized the establishment of special agency accounts by the Department of Veterans Affairs for receipt and disbursement of a patient's personal funds. In *Lowrance*, we determined that a fiduciary relationship was created by statute through which the care and custody of the veteran's funds were based upon an implied agreement between the Veterans Center and the decedent obligating the Veterans Center to safely hold the funds and to disburse them at the direction of the veteran or his lawfully appointed representative.

¶ 21 Just as the statute at issue in *Lowrance* imposed duties upon the Veterans Center in favor of its patients, the construction trust fund statutes impose a duty upon contractors to keep owner funds in trust for the payment of valid lienable claims. Section 153 [29] specifically provides that no portion of the funds collected from owners by contractors under § 152 "shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid." Here, as in *Lowrance*, the fiduciary duty between the owner and the contractor arises from the clear language of the statutory scheme identifying the owner-deposited funds as "trust funds" [30] and imposing a mandatory duty [31] on the contractor to disburse those funds for payment of potential liens against the owner's property.

¶ 22 We align ourselves with those jurisdictions determining that statutes similar to Oklahoma's identifying owner deposited dollars as "trust fund" monies and with the federal courts who have previously determined that a fiduciary relationship exists between owners and their contractors under 42 O.S.2001 §§ 152 and 153. As in *Lowrance v. Patton*, ¶ 19, supra, the confidential affinity between the owner and the contractor arises from the statutory scheme. We determine that 42 O.S.2001 §§ 152 and 153 [32] create a fiduciary duty between the owner of real property depositing construction funds with a general contractor and the contractor to the extent that there are lienable claims arising from a construction contract.

## CONCLUSION

¶ 23 We recognize that an important purpose of bankruptcy statutes is to relieve an honest debtor from the weight of oppressive indebtedness and to permit the person to start afresh. [33] Nevertheless, this Court does not extend it auspices, in statutory construction, to consider the statute's propriety, desirability, wisdom or practicability. These matters are left to the legislative department. [34] Here, the Legislature has denominated owner monies placed with a contractor as "trust funds" in 42 O.S.2001 § 152 [35] and provided in mandatory terms in § 153 [36] that those funds shall not be disbursed for any purpose other than for the

**28.** Title 72 O.S.1981 § 222 provides in pertinent part:

"...'[E]xcept nothing contained herein prohibits the establishment and utilization of special agency accounts by the Department of Veterans Affairs and its constituent institutions, as may be approved by the Special Agency Account Board, for receipt and disbursement of the personal funds of Veteran Center patients and members and/or for receipt and disbursement of charitable contributions and donations for use by and for patients and members."

**29.** Title 42 O.S.2001 § 153, see note 3, supra.

**30.** Title 42 O.S.2001 § 152, see note 2, supra.

**31.** "Shall" can be used permissively. *Walker v. Group Health Serv., Inc.*, 2001 OK 2, ¶ 25, 37 P.3d 749; *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City*, 1980 OK 169, ¶ 0, 619 P.2d 869. However, generally, when the Legislature uses the term

"shall", it signifies a mandatory directive or command. *Walker v. Group Health Serv., Inc.*, this note, supra; *United States through Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶ 7, 921 P.2d 338; *State ex rel. Macy v. Freeman*, 1991 OK 59, ¶ 8, 814 P.2d 147; *Forest Oil Corp. v. Corporation Comm'n*, 1990 OK 58, ¶ 26, 807 P.2d 774.

**32.** Title 42 O.S.2001 § 152, see note 2, supra; 42 O.S.2001 § 153, see note 3, supra.

**33.** *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Matter of Thomas*, see note 15 supra.

**34.** See, *State ex rel. Cartwright v. Dunbar*, 1980 OK 15, ¶ 8, 618 P.2d 900; *Tate v. Logan*, 1961 OK 136, ¶ 0, 362 P.2d 670.

**35.** Title 42 O.S.2001 § 152, see note 2, supra.

**36.** Title 42 O.S.2001 § 153, see note 3, supra.

payment of all lienable claims due and owing until all such claims have been satisfied. The Stevens, as owners, are beneficiaries of the statutory construction trust fund lien scheme. Harris, as the Stevens' general contractor, was engaged in a fiduciary relationship with the owners created by statute to the extent that he held funds for the payment of materialmen's and subcontractor's liens. Harris was charged with the duty to hold the Stevens' advances in trust for payment of subcontractors and suppliers pursuant to 42 O.S.2001 §§ 152 and 153.[37]

HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, SUMMERS, BOUDREAU, WINCHESTER, JJ. concur.

OPALA, J. concurs in result.

---

37. Title 42 O.S.2001 § 152, see note 2, supra; 42    O.S.2001 § 153, see note 3, supra.