2004 OK 1

**Frank J. SILVER, Appellant,**

v.

**CPC–SHERWOOD MANOR, INC., a foreign corporation, Appellee.**

No. 98,847.

Supreme Court of Oklahoma.

Jan. 13, 2004.

Travis A. Scaggs, Kimberly N. Clark, Tulsa, OK, for Appellant.

Judith A. Finn, Laurence Pinkerton, Tulsa, OK, for Appellee.

HODGES, J.

¶ 1 At issue in this matter is whether the plaintiff stated a cause of action for wrongful termination under *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989). This Court holds that the plaintiff has stated a cause of action under *Burk* such that his petition should not have been dismissed for failure to state a claim upon which relief can be granted.

¶ 2 Silver was a cook for CPC–Sherwood Manor, Inc. a nursing home. In his affidavit, Silver stated he arrived for work at 4:50 a.m. on December 9, 2001, and began working immediately. At 5:15 a.m., Silver developed diarrhea and began vomiting a few minutes later. Silver alleged he told the nursing home's assistant administrator, "I need to go to the emergency room. I'm sick. I've got diarrhea and I'm throwing up, and I need to go to the emergency room." He said the administrator responded, "You're not going no damn where. If you leave from there I'm going to dismiss you." Silver then punched out and went to the emergency room, where he was treated for dehydration and an intestinal infection. He said that the following Monday, he took the emergency room papers to the assistant administrator, and she allegedly told him, "I don't want them. I told you if you left that damn job what I was gonna do. You don't work here no more."

¶ 3 Silver sued the nursing home for wrongful termination. In his amended petition, he alleged he was fired in violation of the public policy reflected in certain Oklahoma Administrative Code provisions of the State Department of Health. The nursing home moved to dismiss on the grounds that public policy for a wrongful termination claim cannot be found in agency rules. The trial court dismissed the action and the Court of Civil Appeals affirmed the decision over a vigorous dissent. This Court granted certiorari review.

■■■ ¶ 4 The *Burk* public policy exception to the employment at will doctrine "rests on the notion that in a civilized society the [right] of employers to discharge at-will employees is necessarily balanced against the rights of the public at large as found in existing law." *Clinton v. Logan Co. Election Bd.*, 2001 OK 52, 29 P.3d 543, 545. This exception was adopted to "[serve] the cause of equity as well as the interests of the marketplace." *Burk*, 770 P.2d at 29. *Burk* held that "the circumstances which present an actionable tort under Oklahoma law [include] where an employee is discharged for refusing to act in violation of an established and well-defined public policy." *Id.* "To prevail on a claim of wrongful discharge in violation of Oklahoma's public policy, a plaintiff, must first identify an Oklahoma public policy goal that is well established, clear and compelling and articulated in existing constitutional, statutory or jurisprudential law." *Barker v. State Ins. Fund*, 2001 OK 94, 40 P.3d 463, 468 (citing *Clinton*, 29 P.3d at 546).

■■■ ¶ 5 This matter challenges the granting of a motion to dismiss for failure to state a claim upon which relief could be granted. "When reviewing a motion to dismiss, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them." *Indiana Nat'l Bank v. Department of Human Servs.*, 880 P.2d 371, 375 (Okla.1994). When a trial court is considering its ruling on such a motion, it "should not ask whether the petition points to an appropriate statute or legal theory, but whether relief is possible under any set of facts that could be established consistent with the allegations". *Id.* at 375–376. By this standard, the trial court was obliged to ask whether the plaintiff's allegation, that he

was fired for refusing to continue to cook for the sick and elderly while suffering from diarrhea and vomiting, if proven, would constitute a violation of an appropriately defined public policy. The trial court's decision that no public policy was implicated in the alleged firing presents an issue of law, reviewed *de novo*. *See Kluver v. Weatherford Hosp. Auth.*, 859 P.2d 1081, 1084 (Okla.1993).

■ ¶ 6 This Court need not mire itself in the controversy which confronted the Court of Civil Appeals concerning whether certain agency rules promulgated by the Oklahoma Department of Health provide a permissible source of public policy in this matter. Oklahoma has enunciated the following public policy relating to food in title 63 (Public Health and Safety), chapter 1 (Public Health Code), article 11 (Food), part A (General Provisions). Specifically, it provides in part:

> The following acts and the causing thereof within the State of Oklahoma are hereby *prohibited:*
> (a) The manufacture, sale, or delivery, holding or offering for sale of any food that is adulterated or misbranded.
> * * *
> (c) the receipt in commerce of any food that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

Okla. Stat. tit., § 1–1102 (2001). Adulterated food is defined at title 63, section 1–1109 as follows:

> A food shall be deemed to be adulterated:
> * * *
> (a)(4) if it has been produced, *prepared,* packed, or held under insanitary conditions whereby it may have been rendered diseased, unwholesome, or injurious to health;
> . . .

(emphasis added).

¶ 7 Sections 1–1102(a), (c) and 1–1109(a)(4) articulate, in a clear and compelling fashion, a well-defined, firmly established, state public policy prohibiting the holding, preparing, or delivering of food prepared under conditions whereby it may have been rendered diseased, unwholesome, or injurious to health. The nursing home's alleged failure to follow this policy states a cause of action

under *Burk* sufficient to survive a motion to dismiss for failure to state a claim. This Court expresses no opinion as to the sufficiency or quality of the plaintiff's evidence, yet to be presented, concerning the nursing home's reason for dismissing the cook.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; ORDER OF TRIAL COURT REVERSED; CAUSE REMANDED.

¶ 8 WATT, C.J., OPALA, V.C.J., KAUGER, BOUDREAU, EDMONDSON, JJ., concur.

¶ 9 LAVENDER (joins WINCHESTER, J.), HARGRAVE (joins WINCHESTER, J.), WINCHESTER (by separate writing), JJ., dissent.

WINCHESTER, J., with whom LAVENDER and HARGRAVE, JJ. join, dissenting.

¶ 1 There is no medical finding by a doctor that appellant had a communicable disease in the instant matter. Indeed, the information given to appellant is generic information given to anyone who suffers from diarrhea and vomiting. Discharge papers given to appellant merely state, "Diarrhea can be caused by many different conditions.... Vomiting can be caused by many different medical problems...." *See* Plaintiff's Exhibit B to Response to Defendant's Motion to Dismiss, April 15, 2002. Specific references to appellant are with regard to his return to work and his work/activity restrictions. In this regard, the discharge form states: "Work/Activity Restrictions: NONE." The doctor stated no work/activity restrictions on the very day appellant went to the emergency room. The discharge form states under the category "Return to Work" the following: "Off Work/School through Wed, 12 Dec 01." However, the form also states: "If you wish to return to work sooner than the date indicated above, ... please call us." While appellant says he vomited, had diarrhea, and received treatment in the emergency room, the doctor who treated appellant does not state that he was diagnosed with an intesti-

nal infection caused by bacteria or any other infectious disease.

¶ 2 The public policy exception to the employment-at-will doctrine applies only when the constitutional, statutory or decisional law that contains the public policy is concise and specific. We stated in *Burk v. K–Mart Corp.*, 1989 OK 22, ¶ 17, 770 P.2d 24, 28, that the public policy exception to the at-will termination rule exists "... in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." The majority suggests that 63 O.S. 2001, § 1–1102(a), § 1–1102(c), § 1–1109(a)(4) provides a public policy basis for purposes of *Burk* determinations in the instant matter. I disagree. I believe this language is of such a general nature that it fails to place an employer on notice as to what acts violate public policy, if any, espoused by this statute, unless a doctor diagnoses a preparer of food with a communicable disease.

¶ 3 The statute, 63 O.S.2001, § 1–1102(a), § 1–1102(c), § 1–1109(a)(4), uses at least two broad, sweeping terms that create uncertainty for an employer trying to ascertain its precise meaning vis-a-vis an action for violation of the public policy exception to the employment at-will doctrine. The statutory language, including the undefined terms, "insanitary conditions" and "unwholesome," is imprecise. It invites subjective interpretations and standards. Unless the language is clear enough to determine what public policies rise to the level of being actionable, so neither employee nor employer is jeopardized when an employment decision is made, then the narrow exception to the employment at will doctrine is not triggered.

¶ 4 Absent a doctor's diagnosis of communicable disease, a determination regarding whether preparation of food by appellant would render it "unwholesome," or under "insanitary conditions" is subjective on the appellant's part and the appellee's part, as well. It invites vagueness rather than the clear and convincing standard we deemed necessary in *Burk.* In this case, the medical record does not establish whether appellant suffered diarrhea and vomiting due to an infectious condition. Therefore, a determination as to whether his preparation of food rendered it "unwholesome," or under "insanitary conditions" is not supported by the doctor's exam, given the vague medical record and the vague language contained in the statutes upon which the majority relies.

¶ 5 The statutes relied upon by the majority in the instant matter fall far short of the specificity required to trigger the narrow exception we set forth in Burk. The instant circumstances simply do not give rise to the type of public policy exception Burk envisions. The majority opinion creates uncertainty for employer and employee in trying to apply this public policy exception.

Accordingly, I respectfully dissent.