OSCN Found Document:BOOTH v. HOME DEPOT

 

 
 

 
 BOOTH v. HOME DEPOT
2022 OK 16
Case Number: 119924
Decided: 02/15/2022
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 16, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

JEFFREY BOOTH, Plaintiff/Appellant,
v.
HOME DEPOT, U.S.A., INC., Defendant/Appellee.

CERTIFIED QUESTION FROM THE UNITED STATES 
COURT OF APPEALS FOR THE TENTH CIRCUIT

Â¶0 The United States Court of Appeals for the Tenth Circuit certified to this Court a question of state law based on the Revised Uniform Certification of Questions of Law Act, 20 O.S. Â§Â§ 1601-1611.

CERTIFIED QUESTION ANSWERED

Mark Hammons, Amber L. Hurst, Hammons, Hurst & Associates, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Anh Kim Tran, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee.

KUEHN, J.:

Â¶1 The United States Court of Appeals for the Tenth Circuit certified a question of state law to this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S. Â§Â§ 1601-1611.

Â¶2 This Court may reformulate the question certified by the federal court, and we choose to do so here as the certified question is too narrow. Siloam Springs Hotel, LLC v. Century Surety Co., 2017 OK 14, Â¶ 15, 392 P.3d 262, 266. The reformulated question[1] we will answer is:

"Does the Oklahoma Home Repair Fraud Act, 15 O.S. Â§ 765.3[2], or the Oklahoma Consumer Protection Act, 15 O.S. Â§ 753 (15), (20)[3], articulate a clear mandate of Oklahoma public policy such that an employer who terminates an employee for reporting the employer''s violation of either statute is liable for wrongful termination under Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24?"

Â¶3 The certified question is answered in the negative.

I. CERTIFIED FACTS[4] AND PROCEDURAL HISTORY

Â¶4 Appellant Jeffrey Booth, then an installation service manager for Appellee Home Depot, U.S.A., noticed at a job site that the customer was being charged for window wraps that were not needed. Mr. Booth phoned and emailed his supervisor about the perceived overcharge. The supervisor responded that an overcharge at the beginning of a billing cycle did not really exist because projects go over budget. Mr. Booth replied that Home Depot does not issue refunds for those overcharges if a project does not exceed its budget. Per Mr. Booth, the supervisor ignored this remark.

Â¶5 The next day, Appellee began an investigation of Mr. Booth for an email he sent ten days earlier critiquing a colleague''s work performance. After a one-day investigation of the allegation in the email, and two days after the overcharge report, Appellant Booth was terminated.

Â¶6 Mr. Booth sued Home Depot in Oklahoma state court claiming wrongful termination under Burk, alleging his job performance was good and that the email investigation was only a pretext for the real reason for termination -- his reporting of the overcharging of customers to his supervisor. Home Depot removed the Oklahoma County case to the federal district court under diversity jurisdiction.

Â¶7 In his amended federal complaint, Appellant Booth claims that the overcharging of customers violated the Oklahoma Home Repair Fraud Act, 15 O.S. Â§ 765.3, and/or the Oklahoma Consumer Protection Act, 15 O.S. Â§ 753(15), (20). In its defense, Appellee Home Depot does not dispute that, if overcharging occurred, it would violate those acts. Home Depot argues that the violation of the statutes does not articulate a clear mandate of Oklahoma public policy sufficient to support a Burk tort.

Â¶8 The federal district court agreed with Home Depot that the statutes do not articulate a clear public policy and dismissed the petition for failure to state a claim upon which relief can be granted. Appellant Booth then appealed to the United States Court of Appeals for the Tenth Circuit, which then certified the question about the statutes to this Court.

II. ANSWERING CERTIFIED QUESTIONS

Â¶9 This Court''s examination of the certified question is confined to resolving questions of law, not facts. Russell v. Chase Inv. Servs. Corp., 2009 OK 22, Â¶ 8, 212 P.3d 1178, 1181. The Court, when assessing whether a certified federal question of law should be answered, considers: (1) whether the answer would be dispositive of an issue in pending litigation in the certifying court; and (2) whether there is established and controlling law on the subject matter. 20 O.S. Â§ 1602; Siloam Springs Hotel, 2017 OK 14, Â¶ 14, 392 P.3d at 265-66. Answering the certified question here would be dispositive of a pending issue in the federal court, and there is no controlling case on whether the OCPA and the OHRFA articulate clear public policy. 15 O.S. Â§ 765.3 and 15 O.S. Â§ 753 (15), (20).

III. ANALYSIS

Â¶10 Oklahoma has long recognized the employment-at-will doctrine. An employer can discharge an employee for "good cause, no cause, or even for a morally wrong cause without being liable for a legal wrong." Reynolds v. Advance Alarms, Inc., 2009 OK 97, Â¶ 5, 232 P.3d 907, 909.

Â¶11 This Court has held that those at-will contractual rights may be limited by the public policy of the State of Oklahoma. Siloam Springs Hotel, 2017 OK 14, Â¶ 20, 392 P.3d at 267--68. In establishing this judicially created exception in Burk, the Court delineated the elements one must prove to qualify for a public policy exception: (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma''s constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma, and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal. Vasek v. Bd. of Cnty. Comm''rs of Noble Cnty., 2008 OK 35, Â¶ 14, 186 P.3d 928, 932. An employer''s violation of a state-declared public policy is the "fundamental predicate for a Burk tort." Darrow v. Integris Health, Inc., 2008 OK 1, Â¶ 10, 176 P.3d 1204, 1210. Neither the OCPA nor the HRFA identifies a clear and compelling public policy that creates an exception to the at-will doctrine.

Â¶12 Appellant argues that, because the Acts protect all Oklahomans from criminal actions of fraud by a retailer, public policy is clearly established. Not so. The OCPA and the HRFA are not primarily criminal statutes. Both create civil remedies for unsuspecting consumers for the misleading actions of retailers. Even if the Acts were exclusively criminal in nature, this Court has already held that reporting criminal activity is not infused with the necessary clear and compelling public policy sufficient to protect the employee from discharge under the tort established in Burk. Hayes v. Eateries, Inc., 1995 OK 108, Â¶ 25, 905 P.2d 778, 787.[5] If a criminal statute is violated and the employee reports the crime only to be fired, this Court will not find that the Legislature has created public policy unless the public interest for reporting the crime is completely entwined with the criminal law. Darrow, 2008 OK 1, Â¶ 18, 176 P.3d at 1215.

Â¶13 In Darrow, the employee was discharged for reporting fraud. But unlike this case, the victim of the fraud was the entire population of Oklahoma, not an indeterminate number of individual victims. The employee was reporting fraud on the Medicare system, a financial system supported with general public tax dollars and potentially benefitting the public as a whole. Darrow, 2008 OK 1, Â¶ 18, 176 P.3d at 1215. A policy to protect public funds from theft, thus protecting the public welfare, is within the narrow exception to the at-will doctrine established in Burk.

Â¶14 The Darrow Court began to establish our test for understanding what statutes create a clear and compelling statement of public policy. Absent an announcement written in the statute that "public policy" is the motivation behind the legislators'' intent, recent decisions of this Court have expounded upon how to determine if a clear and compelling public policy exists in the law.

Â¶15 Although over the years Justices may have disagreed on the application of Burk in individual cases, Burk''s fundamental scope is easily understood. In Darrow, this Court determined that violations of "public health, safety, and welfare" are protected by clear and compelling public policy. Darrow, 2008 OK 1, Â¶ 20, 176 P.3d at 1216. This narrowly limits the Burk exception to only those matters which affect the welfare of the State as a whole and fit within the traditional limitations of government action. For instance, in Collier v. Insignia Fin. Grp., 1999 OK 49, Â¶ 11, 981 P.2d 321, 324--25, the Court held that the language of Oklahoma''s Anti-Discrimination Act "clearly articulates a public policy which castigates sexual harassment in the workplace." The law established the public policy that no employers may condition employment of any employee on quid pro quo sexual favors -- i.e., protection of the State''s workforce is a matter of public welfare. Id.; 25 O.S. Â§ 1302. This Court found a violation of public health and safety in Silver v. CPC-Sherwood Manor, Inc., 2004 OK 1, 84 P.3d 728. The Court held that statutes articulated "state public policy prohibiting the holding, preparing, or delivering of food prepared under conditions whereby it may have been rendered diseased, unwholesome, or injurious to health." Id. at Â¶ 7, 84 P.3d at 730. Public policy is established when a law is violated that protects the public from harm to their health, safety, and welfare.

Â¶16 Appellant asks this Court to expand the areas traditionally protected by public policy in the employment context. Neither statute at issue here protects the public health, safety or welfare; instead, these statutes offer protection to consumers from a variety of unlawful business practices. Basically, Appellant wants the Burk exception to include the protection of individualized economic harm. This we cannot do. Not only do the statutes not encompass an area recognized by the Court as protected by public policy, but the argument also fails as the harm is not to the public. The OCPA and the OHRFA protect individuals who may encounter a fraudulent merchant, not Oklahoma citizens in general. 15 O.S. Â§ 765.3; 15 O.S. Â§ 753 (15), (20).

Â¶17 Neither statute articulates a public policy goal to satisfy Burk. In addition, the statutes provide specific remedies for persons harmed by violations of the Acts. Here, Appellant''s argument also fails part 5 of the Burk test, as a statutory remedy exists that is adequate to protect customers from bad merchants. Vasek, 2008 OK 35, Â¶ 14, 186 P.3d at 932. Both the OHRFA and the OCPA provide specific circumstances that qualify for violations against individual consumers and are remedied with civil actions or criminal indictment - on the consumer''s behalf - by the Attorney General or district attorneys. 15 O.S. Â§Â§ 757-63. Both Acts also, crucially, provide for a private right of action or damages by a wronged customer against the merchant. 15 O.S. Â§ 761.1. And these remedies reflect the individual, economic nature of the injuries. The Legislature is focused on the harm to the consumer, not an employer/employee relationship. Decisions concerning the creation or abolishment of public policy causes of action are within the judgment of the Legislature. Torres v. Seaboard Foods, LLC, 2016 OK 20, Â¶ 35, 373 P.3d 1057, 1075. If a sufficient statutory remedy is available to right the harm to the public, then a Burk tort is not available in the district court. Southon v. Okla. Tire Recyclers, LLC, 2019 OK 37, Â¶ 18, 443 P.3d 566, 573.

Â¶18 Here, the internal reporting of a possible customer overcharge could be resolved by the filing of a cause of action to rectify the practice and payments to any victims. The Appellant''s internal reporting of what he believes was fraudulent did nothing to protect a specific customer. Appellant argues that he was protecting all potential future customers from any illegal practice, but that argument does not help him reach the public policy exception. Even if 100 or 1000 customers were potentially harmed, the statutes are not in place to create a public policy against protecting the public in general from overcharge.

Â¶19 The OHRFA and the OCPA protect specific individual consumers against fraud with criminal and civil remedies for those individual victims. The Court will not expand our public policy exceptions to include protection from economic harm. Without a clear mandate from the Legislature, the Acts do not qualify as an established public policy.

CERTIFIED QUESTION ANSWERED

CONCUR: DARBY, C.J., KANE, V.C.J., WINCHESTER, EDMONDSON, COMBS, GURICH, ROWE and KUEHN, JJ.

CONCUR IN PART and DISSENT IN PART: KAUGER, J.

FOOTNOTES

[1] The question certified by the United States Court of Appeals for the Tenth Circuit was:

Does the Oklahoma Home Repair Fraud Act, 15 O.S. Â§ 765.3, or the Oklahoma Consumer Protection Act, 15 O.S. Â§ 753 (15), (20), articulate a clear mandate of Oklahoma public policy such that an employer who terminates an employee for internally reporting the employer''s violations of the statutes is liable for wrongful termination under Burk v. K-Mart Corporation, 770 P.2d 24 (Okla. 1989)?

The question was reformulated by this Court to answer the broader legal question on public policy, which is dispositive of the more factual question certified by the Appeals Court.

[2] "Acts constituting fraud: A person commits the offense of home repair fraud if the person knowingly or with reason to know:

1. enters into a consumer transaction for home repair and knowingly or with reason to know:

a. misrepresents a material fact relating to the terms of the consumer transaction or the preexisting or existing condition of any portion of the property involved, or creates or confirms an impression of the consumer which is false and which the violator does not believe to be true, or promises performance which the violator does not intend to perform or knows will not be performed; or

b. uses or employs any deception, false pretense or false promises in order to induce, encourage or solicit such consumer to enter into any consumer transaction; or

c. requires payment for the home repair at a price which unreasonably exceeds the value of the services and materials needed for the home repair;

2. damages the property of a person with the intent to enter into a consumer transaction for home repair; or

3. misrepresents himself or another to be an employee or agent of any unit of the federal, state, county, or municipal government, or an employee or agent of any public utility, with the intent to cause a person to enter into, with himself or another, any consumer transaction for home repair."

15 O.S. Â§ 765.3.

[3] "A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act when, in the course of the person''s business, the person:

...

15. Falsely states, knowingly or with reason to know, that services, replacements or repairs are needed...

20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title..."

15 O.S. Â§ 753 (15), (20).

[4] The Court does not presume facts outside those offered by the certification order. Siloam Springs Hotel, LLC v. Century Surety Co., 2017 OK 14, Â¶ 2, 392 P.3d 262, 263; Howard v. Zimmer, Inc., 2013 OK 17, n.5, 299 P.3d 463, 465; In re Harris, 2002 OK 35, Â¶ 4 n.5, 49 P.3d 710, 713.

[5] In Hayes, the fired employee argued that his reporting of another employee''s fraud on the employer constituted a violation of public policy. Id. Â¶ 20, 905 P.2d at 785. The Court held, if the report of fraud was made to internal supervisors or the police, the actions of reporting a crime were not automatically established public policy. Id. Â¶ 27, 905 P.2d at 788. The Hayes Court held that the fraud reported by the employee affected the private and proprietary rights of the employer, not the general public, and therefore no Burk exception was created by the statute.